UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                          Case No. 16-42333

ST. JAMES NURSING AND PHYSICAL                  Chapter 11
REHABILITATION CENTER, INC., et al.[1]          (Jointly Administered)

          Debtors.                      Judge Thomas J. Tucker
_____/

**OPINION REGARDING CONFIRMATION OF THE DEBTORS' PROPOSED PLAN,
AND CERTAIN OTHER RELATED MATTERS**

**I. Introduction**

      The Debtors in these two jointly-administered Chapter 11 cases are St. James Nursing and Physical Rehabilitation Center, Inc. ("St. James") and MPMS St. James Real Estate Acquisition, LLC ("RE Hold Co."). St. James owns and operates a business in the form of a skilled nursing care facility, located at 15063 Gratiot Ave., Detroit, Michigan. RE Hold Co. owns the real estate at the location of the St. James facility. In their joint Chapter 11 plan, the Debtors propose to reorganize their debts, and continue to operate their businesses.

      These cases came before the Court for a hearing on August 24, 2016, regarding confirmation of the Debtors' proposed amended Chapter 11 Plan (Docket # 93, the "Plan"). Many parties filed objections to confirmation, all of which have been resolved by agreement, except (1) the joint objections of VPH Pharmacy, Inc.; Reliance Pharmacy, Inc.; Rajesh Patel; and Chiman Patel (collectively the "Patel-Related Entities")(Docket # 108); and (2) the objection of Rehab Solutions, Inc. ("Rehab Solutions"), an unsecured creditor that filed a "concurrence" in

---

[1] The Debtors in these jointly-administered cases are St. James Nursing & Physical Rehabilitation Center, Inc. (Case No. 16-42333) and MPMS St. James Real Estate Acquisition, LLC (Case No. 16-44722).

the objections of the Patel-Related Entities (Docket # 116).

The agreed settlement of the resolved objections is reflected in the provisions of a proposed order confirming the Plan attached to the stipulation filed by the Debtors on September 14, 2016 (Docket # 149, the "OCP Stipulation").  All objecting parties except the Patel-Related Entities and Rehab Solutions signed the OCP Stipulation.

Rehab Solutions did not appear at or participate in the August 24, 2016 confirmation hearing.  During that hearing, the Court scheduled an evidentiary hearing regarding the joint objections of the Patel-Related Entities.  The evidentiary hearing was held and concluded on September 13, 2016, at which time the Court took the matter under advisement.  Rehab Solutions did not appear at or participate in the evidentiary hearing.

For the reasons stated in this opinion, the Court will overrule the joint objections of the Patel-Related Entities, and will also overrule the "concurrence" in those objections filed by Rehab Solutions.  The Court will confirm the Debtors' Plan, with amendments to that Plan, all as reflected in the OCP Stipulation and proposed confirmation order attached to that stipulation. After making non-substantive revisions to the Debtors' proposed confirmation order, the Court will enter that order.  Relatedly, and for the reasons stated in this opinion, the Court also will enter a separate order denying the motion filed by the Patel-Related Entities for the appointment of a Chapter 11 trustee (Docket # 70), and denying, as moot, discovery-related motions filed by the Debtors on August 31, 2016 and filed by the Patel-Related Entities on September 2, 2016.

## II. Jurisdiction

This Court has subject matter jurisdiction over this bankruptcy case under 28 U.S.C. §§ 1334(b), 157(a) and (b)(1), and Local Rule 83.50(a) (E.D. Mich.).  This confirmation matter is

a core proceeding under, among other possible provisions, 28 U.S.C. § 157(b)(2)(L). The motion by the Patel-Related Entities for the appointment of a Chapter 11 trustee, based on 11 U.S.C. § 1104, is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A) and 157(b)(2)(O).

These matters also are "core" because they each fall within the definition of a proceeding "arising under title 11" and of a proceeding "arising in" a case under title 11, within the meaning of 28 U.S.C. §1334(b). Matters falling within either of these categories in § 1334(b) are deemed to be core proceedings. *See Allard v. Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009). These matters are proceedings "arising under title 11" because they are "created or determined by a statutory provision of title 11," *id.*, including 11 U.S.C. §§ 1129 and 1104. And these matters are proceedings "arising in" a case under title 11, because they are proceedings that "by [their] very nature, could arise only in bankruptcy cases." *Id.*

### III. Discussion

#### A. Brief background

As the proponents of the Plan, the Debtors have the burden of proving, by a preponderance of the evidence, that all of the requirements for confirmation under 11 U.S.C. § 1129(a) have been satisfied.[2] *See In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 459-63 (Bankr. S.D. Ohio 2011). The Court finds and concludes that Debtors have met that burden, and that the unresolved objections to confirmation must be overruled.

The Plan proposes treatment of numerous priority claims, secured claims, and non-priority unsecured claims against St. James, and several secured claims against RE Hold Co.

---

[2] Because all impaired classes in these jointly-administered cases have accepted the Plan, none of the requirements for confirmation on a so-called "cram-down" basis under 11 U.S.C. § 1129(b) apply.

Under the Plan there are seven classes of claims and one class of interest holders as to St. James (Classes I through VIII). As to RE Hold Co., there are four classes of secured creditors, no class containing unsecured claims, and a class of interest holders (Classes IX through XV).

It is not necessary, in this opinion, to set forth further details about the classes in the Plan and the Plan's proposed treatment of them, primarily because all classes have accepted the Plan.

To the extent the Patel-Related Entities and Rehab Solutions have allowed claims in these two jointly-administered cases, it is undisputed that those claims are general (non-priority), unsecured claims against the Debtor St. James.[3] Such claims are classified and treated in Class VII of the Plan. That impaired class voted to accept the Plan, despite the fact that VPH Pharmacy, Inc. (one of the Patel-Related Entities) and Rehab Solutions voted to reject the Plan.

**B. Status of the objections of the Patel-Related Entities**

In their written objection to the Debtors' disclosure statement and to confirmation of the Plan, filed August 12, 2016 (Docket # 108), the Patel-Related Entities made several arguments as to why the Court should not grant final approval of the Debtors' disclosure statement (contained within the combined plan and disclosure statement, Docket # 93), and why the Court should not confirm the Plan. After the Debtors filed their ballot summary on August 19, 2016 (Docket # 118) and by the time of the August 24, 2016 confirmation hearing, the situation and the issues had evolved in such a way that the objections of the Patel-Related Entities to confirmation boiled

---

[3] VPH Pharmacy, Inc., one of the Patel-Related Entities, filed a non-priority, unsecured claim in the St. James case (Claim No. 5-1) in the amount of $235,321.86. Rehab Solutions filed a non-priority, unsecured claim in the St. James case (Claim No. 15-1) in the amount of $351,631.20.

down to two arguments:[4] namely, that the Debtors have not demonstrated that the Plan meets the feasibility requirement of 11 U.S.C. 1129(a)(11); and that the Debtors have not proposed the plan in good faith, as required by 11 U.S.C. § 1129(a)(3).[5] And the latter objection, lack of good faith, is based on the alleged fact that the Debtors are proposing a plan lacking feasibility.

So it has become clear after the August 24, 2016 confirmation hearing that the objections to confirmation of the Patel-Related Entities come down to feasibility. The Court limited the evidentiary hearing to that issue. And because the Court finds, as discussed below, that the Debtors have met their burden of proof as to feasibility, the Patel-Related Entities's objections to

---

[4] If and to the extent the written objections by the Patel-Related Entities to final approval of the Debtors' disclosure statement have not been abandoned, they are overruled now, because they are without merit. The reasons why this is so include: (1) the reasons argued by the Debtors in their brief filed on August 23, 2016 (Docket # 119); (2) because the Court finds that the disclosure statement contained "adequate information" within the meaning of 11 U.S.C. § 1125; and (3) because the Patel-Related Entities (and Rehab Solutions) voted to reject the Plan, and they clearly would have done so no matter what the Debtors' disclosure statement said or did not say. (This last point is reinforced by a statement made by counsel for the Patel-Related Entities during closing argument in the September 13, 2016 evidentiary hearing. The statement was, in substance, that the Patel-Related Entities would have voted to reject Debtors' Plan even if they had known that revised projections would show that Debtors would have substantially more money available to pay creditors (including Class VII) than shown in the original projections. The Revised Projections included a correction/revision that reduced by $800,000 per year the "Medicaid Contractual Allowance," Line 40012. This had the effect of increasing the Debtors' total Medicaid Revenue, Line 40010 Total, by $800,000 per year).

[5] Some of the written objections to confirmation, filed August 12, 2016, were mooted by later events. For example, when it later became known that all impaired classes had accepted the Plan, including Class VII (the Patel-Related Entities' class), the objection that the Plan violated the absolute priority rule became moot. Similarly, objections about the Plan's provisions for an auction of the equity interests of the Debtors became moot due to the acceptance of the Plan by all impaired classes. These objections to confirmation assumed that confirmation on a cram-down basis under 11 U.S.C. § 1129(b) would be necessary. But that turned out not to be the case, as noted in footnote 2 of this opinion.

One of the arguments in the written confirmation objections filed by the Patel-Related Entities, which was not discussed during the August 24, 2016 confirmation hearing or the September 13, 2016 evidentiary hearing, is the argument that the Plan's stated treatment of the St. James unsecured creditor class, Class VII, is unclear. *(See* Docket # 108 at 4-5.) If this argument has not been abandoned, the Court rejects it, because the Court finds that the Plan's stated treatment of Class VII is *not* unclear.

confirmation must be overruled.

### C. The "concurrence" objections of Rehab Solutions

For the same reasons just summarized above, the objections of Rehab Solutions, which merely "concurred" in the objections of the Patel-Related Entities by reference, also must be overruled. In addition, the Court finds that Rehab Solutions abandoned its "concurrence" objections, and that those objections must be overruled for lack of prosecution, due to the failure of Rehab Solutions to appear at and participate in either the August 24, 2016 confirmation hearing or the September 13, 2016 evidentiary hearing.

### D. Feasibility; 11 U.S.C. § 1129(a)(11)

#### 1. General principles

Section 1129(a)(11) of the Bankruptcy Code contains the so-called feasibility requirement for confirmation of a debtor's Chapter 11 plan. *In re Waterford Hotel, Inc.*, 497 B.R. 255, 263 (Bankr. E.D. Mich. 2013) (citing *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 478 (Bankr. S.D. Ohio 2011)). It states:

> (a) The court shall confirm a plan only if all of the following requirements are met:
> 
> . . .
> 
> (11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

11 U.S.C. § 1129(a)(11). As with the other requirements for confirmation under § 1129(a), the Debtor, as the proponent of the proposed Plan, has the burden of proving by a preponderance of the evidence that the proposed Plan satisfies the feasibility requirement under § 1129(a)(11). *See*

*Waterford Hotel,* 497 B.R. at 261 (citing *Trenton Ridge*, 461 B.R. at 459–63).

As to the feasibility requirement, this Court explained in *Waterford Hotel*,

> The feasibility requirement of § 1129(a)(11) is satisfied, **if the Debtor demonstrates that there is a "reasonable probability" that the debtor will be able [to] make all of the payments to creditors according to the terms provided in the plan**. However,
>
>> [d]ebtors emerging from a Chapter 11 case are, by definition, attempting to overcome difficult financial circumstances. Thus, **the proponent of a Chapter 11 plan need not show that success is guaranteed; nor is it fatal for the debtor that a possibility of failure is shown.** Rather, when a business seeks to reorganize, **only a reasonable assurance of commercial viability is required to establish feasibility** for purposes of § 1129(a)(11).
>>
>> When assessing the future commercial viability of a debtor's business, the question of feasibility under § 1129(a)(11) is fundamentally one of **whether the debtor has the ability to meet its future obligations, both as provided for in the plan and as may be incurred in its business operations.**
>
> *In re Arts Dairy, LLC*, 432 B.R. 712, 717 (Bankr. N.D. Ohio 2010) (citations omitted); *see also In re Griswold Bldg., LLC*, 420 B.R. 666, 697 (Bankr. E.D. Mich. 2009) (citation omitted). "'Feasibility determinations must be firmly rooted in predictions based on objective fact.'" *Griswold*, 420 B.R. at 697 (quoting *Danny Thomas Properties II L.P. v. Beal Bank, S.S.B.* (*In re Danny Thomas Properties II L.P.*), 241 F.3d 959, 964 (8th Cir. 2001) (internal quotation marks and citation omitted)). Factors relevant to a feasibility determination are:
>
>> (1) the adequacy of the capital structure; (2) the earning power of the business; (3) economic conditions; (4) the ability of management; (5) the probability of the continuation of the same management; and (6) any other related matter which determines the prospects of a sufficiently successful

7

> operation to enable performance of the provisions of
> the plan.
>
> Other factors courts have considered include "the past financial performance of the debtor . . . and the term of the plan." *Griswold*, 420 B.R. at 697 (citation omitted).

*Waterford Hotel*, 497 B.R. at 263 (emphasis added) (some citations omitted).

### 2. The feasibility of the Debtors' Plan in this case

The Court has considered all of the testimony presented at the evidentiary hearing, all of the exhibits admitted into evidence during the evidentiary hearing, and all of the arguments of counsel. The evidence consisted of (1) the testimony of H. Roger Mali, the owner and operator of Mission Point Management Services, LLC, which manages the Debtor St. James; (2) the testimony of Laurence D. Rich, the owner of Samson Senior Properties LLC, an expert witness presented by the Patel-Related Entities; (3) the Debtors' Exhibits A through N; and (4) the Patel-Related Entities' Exhibits 1, 2, 3, 7, and 8.

The Debtors' exhibits include, in Exhibit C, revised projections (the "Revised Projections"). These Revised Projections are detailed projections, for each of the five years after confirmation of the Plan, of the Debtors' income, expenses, and required plan payments. The required plan payments included in these Revised Projections reflect and include all required payments under the proposed Plan, as amended by the provisions of the Debtors' proposed confirmation order, which amendments reflect the Debtors' settlements of the resolved confirmation objections (the "Plan as Amended").

The numbers in the Debtors' Revised Projections show that the Debtors will be able to meet their expenses, including ongoing tax obligations, and make all the payments required by

8

the Plan as Amended. Based on the testimony of Mr. Mali, which the Court finds to be credible and persuasive, the Court finds that the Debtor's Revised Projections are reliable, conservative, well-grounded and adequately based on the Debtors' historical financial performance, including the Debtors' more recent financial performance, *i.e.*, the financial performance for 2015 and for the pre- and post-petition parts of 2016.

As a result, the Court finds that the Debtors have met their burden of proving, by a preponderance of the evidence, "that there is a 'reasonable probability' that the [Debtors] will be able make all of the payments to creditors according to the terms provided in the [Plan as Amended]," and meet their "future obligations . . . as may be incurred in [their] business operations." *See Waterford Hotel*, *supra*.

The main argument that the Patel-Related Entities made in the evidentiary hearing is that the Debtors' Revised Projections do not adequately account for bad debt (uncollectible receivables), either as a separate expense item or as a component of the "Medicaid Contractual Allowance" line item in the projections (Line 40012), or otherwise in the projections. The Court finds otherwise, however, and finds that a sufficient and ample amount for such bad debt is included as part of the "Medicaid Contractual Allowance" line item in the Revised Projections. Furthermore, if one uses the higher percentage allowance for bad debt that the Patel-Related Entities' expert advocated (7% of "Medicaid Revenue," Line 40010, as opposed to the Debtors' 4.27%), and applies that 7% figure to the Debtors' Revised Projections (in the way that counsel for the Patel-Related Entities argued in closing argument, in discussing Debtors' Exhibit N), it is clear from Exhibit N that even with such an adjustment to the Debtors' Revised Projections, the Debtors' projected net income would still be positive for each of the five years in the projections

— showing that the Debtors still would be able to pay their expenses, including their ongoing taxes, and make all their required Plan payments.

The Patel-Related Entities also argued that the amount of projected revenue for each of the five years of the Revised Projections in the line for "Private Patient Revenue/Patient Billed" (Line 40031) was not reliable or adequately supported. The Court finds otherwise, however, based primarily on the testimony of Mr. Mali.

For these reasons, the Court finds that the Debtors have met their burden of proving the feasibility of their proposed Plan as Amended, as required by 11 U.S.C. § 1129(a)(11).

**E. Good faith; 29 U.S.C. § 1129(a)(3)**

Because the Court has found the Debtors' proposed Plan as Amended to be feasible, the Court must reject the Patel-Related Entities related objection that the Plan is not proposed in good faith. That argument was premised on the claim that the Debtors were proposing a plan that was not feasible. *See* discussion in Part III-B of this opinion, above.

Section 1129(a)(3) requires the Debtor to show that "[t]he plan has been proposed in good faith and not by any means forbidden by law." The Court finds that the Debtors' proposed Plan as Amended meets this requirement.

As this Court discussed in *Waterford Hotel*,

> The Bankruptcy Code does not define the term "good faith," and the Sixth Circuit has not defined it for purposes of § 1129(a)(3). But "the term is generally interpreted to mean that there exists a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code."

*Trenton Ridge Investors*, 461 B.R. at 468 (quoting, in part, *In re*

10

16-42333-tjt    Doc 155    Filed 09/16/16    Entered 09/16/16 14:26:35    Page 10 of 12

>  *Madison Hotel Assocs.*, 749 F.2d 410, 425 (7th Cir.1984)). "'Two
>  primary purposes of chapter 11 relief are the preservation of
>  businesses as going concerns, and the maximization of the assets
>  recoverable to satisfy unsecured claims.'" *Id.* at 469 (quoting
>  *Fields Station LLC v. Capitol Food Corp. of Fields Corner* (*In re
>  Capitol Food Corp. of Fields Corner*), 490 F.3d 21, 25 (1st Cir.
>  2007), and citing *Bonner Mall P'ship v. U.S. Bancorp Mortg. Co.
>  (In re Bonner Mall P'ship*), 2 F.3d 899, 916 (9th Cir. 1993)). In
>  making the good faith determination, courts examine the "totality
>  of the circumstances." *Id.* at 468-69.

*Waterford Hotel*, 497 B.R. at 266.

The Court finds that under the totality of the circumstances, the Debtors' Plan as Amended has been proposed in good faith. The Plan as Amended, which has been accepted by every class of creditors, serves the primary purposes of Chapter 11, described in the *Waterford Hotel* case, quoted above, and should be confirmed.

## IV. Conclusion

For the reasons stated in this opinion, the Court overrules all of the objections of the Patel-Related Entities, and of Rehab Solutions, to confirmation, and the Court will confirm the Debtors' Plan as Amended, and grant final approval of the Debtors' disclosure statement, by entering, with non-substantive revisions, the proposed confirmation order stipulated to by the other objecting parties (Docket # 149).

Because the Court is confirming the Debtors' Plan, there is no valid basis for the Court to appoint a Chapter 11 trustee under 11 U.S.C. § 1104.[6] So the Court will prepare and enter an order denying the motion filed by the Patel-Related Entities for the appointment of a trustee (Docket # 70).

---

[6] The Patel-Related Entities acknowledged this point during the August 24, 2016 confirmation hearing, when their attorney said that confirmation of the Debtors' Plan would "moot" the trustee motion.

11

And finally, under the circumstances, the Court finds that the parties' competing discovery-related motions, filed by the Debtors on August 31, 2016 (Docket # 125) and filed by the Patel-Related Entities on September 2, 2016 (Docket # 130), are now moot. The Court will enter an order denying those motions, as moot.

**Signed on September 16, 2016**               /s/ Thomas J. Tucker
                                               **Thomas J. Tucker**
                                               **United States Bankruptcy Judge**