# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:                                              Case No. 16-42333

ST. JAMES NURSING & PHYSICAL                        Chapter 11
REHABILITATION CENTER, INC.,
                                                    Judge Thomas J. Tucker
            Debtor.
_____/

## OPINION REGARDING PENDING MOTIONS

## I.  Introduction

The motions now before the Court in this Chapter 11 case require the Court to decide

whether this Court has subject matter jurisdiction to decide a dispute that has arisen long after the

confirmation of the Debtor's plan of reorganization.  For the reasons stated in this Opinion, the

Court concludes that it lacks subject matter jurisdiction.

## II.  Background

This case is before the Court on two motions:

A.  The motion filed by Chiman Patel ("Patel"), entitled "Motion To Appoint A Trustee

For The Investigation And Administration Of Debtor's Assets" (Docket # 188, the "Patel

Motion"); and

B.  The motion filed by Kevin English, Receiver ("English" or the "Receiver"), entitled

"Motion Of Kevin English, Receiver Over St. James Nursing And Physical Rehabilitation

Center, Inc., For Entry Of An Order (I) Abstaining From Hearing Chiman Patel's Motion To

Appoint A Trustee For The Investigation And Administration Of Debtor's Assets, (II) Closing

The Bankruptcy Case, And (III) Granting Related Relief" (Docket # 191, the "Abstention

Motion").

Objections to the Patel Motion were filed by the Debtor, English, and the United States

Trustee. An objection to the Abstention Motion was filed by Patel. The Debtor filed a response concurring in the Abstention Motion.

The Court held a telephonic hearing on the motions. Attorneys for each of the following parties appeared at the hearing: Patel; the Debtor; the United States Trustee; and English, and English also personally appeared at the hearing. Confirming certain action taken during the hearing, and for the reasons stated by the Court on the record during the hearing, the Court entered an order regarding further proceedings.[1] The Court ordered certain additional briefing and the filing of certain supplemental exhibits.

The Court has reviewed and considered all of the briefs and other documents filed by the parties, both before and after the hearing, and the arguments of the parties made during the hearing. For the reasons stated in this Opinion, the Court will deny the Patel Motion, for lack of subject matter jurisdiction, and the Court will deny the Abstention Motion, as moot.

## III. Facts and arguments of the parties

This dispute arises out of Patel's efforts to collect a debt he says is owed to him by the reorganized Debtor, St. James Nursing & Physical Rehabilitation Center, Inc. ("St. James"). Patel claims the debt is owed under a written settlement agreement that was entered into by Patel, St. James, and others (the "Settlement Agreement"), several months after the confirmation of St. James's Chapter 11 Plan. The Settlement Agreement was not contemplated by or included in St. James's Chapter 11 Plan or the Court's order confirming that Plan. Nor was St. James's confirmed Plan ever modified to incorporate the Settlement Agreement.

The Court will state in detail the facts and arguments of the parties bearing on the pending motions. All of the facts are undisputed.

---

[1] Docket # 203.

**A. Pre-petition litigation involving St. James**

Before St. James filed this bankruptcy case, it was involved in state court litigation, along with Cadillac Nursing Home, Inc. d/b/a St. Francis Nursing Center "("St. Francis"), and other entities owned and/or controlled and/or managed by H. Roger Mali and Bradley Mali (collectively, the "Mali Family Entities"). The litigation was against Patel, Rajesh Patel; Amee Patel, Amee V. Patel Revocable Living Trust, u/a/d/ Sept. 26 2007; Devenhummar Patel a/k/Devan Patel; Reliance Pharmacy, Inc.; VPH Pharmacy, Inc.; and other entities owned and/or controlled and/or managed by Patel and members of his family (the "Patel Family Entities"). In the litigation, the Patel Family Entities sought to collect amounts owed to them by the Mali Family Entities under various agreements for pharmacy services. While the litigation was still pending, some of the Mali Family Entities, including St. James, filed voluntary Chapter 11 petitions.

**B. St. James's bankruptcy case**

On February 22, 2016, the Debtor St. James filed a voluntary petition for relief under Chapter 11, commencing this case.[2] Patel was not a creditor in the St. James bankruptcy case. St. James did not list Patel as a creditor on its schedules,[3] and although Patel was provided notice of the St. James bankruptcy case, he never filed a proof of claim in the case. The deadline to file

---

[2] The St. James bankruptcy case was jointly administered with the bankruptcy case of MPMS St. James Real Estate Acquisition, LLC ("RE Hold Co.") (Case No. 16-44722). St. James owned and operated a skilled nursing care facility, under a lease of property located at 15063 Gratiot Avenue, Detroit, Michigan. RE Hold Co. owned the real estate on which the St. James facility operated. The RE Hold Co. bankruptcy case was closed on November 16, 2016, and remains closed. RE Hold Co. is not involved in the dispute between Patel and St. James. For this reason, the Court will refer only to the Debtor St. James in this Opinion, although many of the facts apply to both Debtors.

[3] *See* Docket ## 27 (schedules), 76 (amended schedules).

proofs of claim, for non-governmental entities, was June 21, 2016.[4]

On June 9, 2016, Patel, VPH Pharmacy, Inc., Reliance Pharmacy, Inc., and Rajesh Patel (collectively, the "Patel-Related Entities"), filed a motion for the appointment of a Chapter 11 Trustee (the "Trustee Appointment Motion").[5] The Patel-Related Entities argued in that motion that it was necessary to appoint a Chapter 11 trustee because St. James and affiliated debtors in other bankruptcy cases "had all been grossly mismanaged by insiders and affiliates for years . . . leading to severe – and increasing – tax delinquencies and a total of eight chapter 11 petitions among them;" St. James had "failed and refused to seek outside management or engage in a real process to address their situation;" and "the plans are to transfer the bulk of assets to the same insider who has been mismanaging them for years."[6]

On July 8, 2016, St. James filed an amended combined plan and disclosure statement (the "Plan"),[7] and the Court entered an order granting preliminary approval of the disclosure statement.[8] The Plan contemplated that certain exhibits to the Plan would be "modified, amended, or supplemented."[9]

On August 12, 2016, St. James filed a notice that it was supplementing the Plan with additional exhibits (the "Plan Supplement").[10] The Plan Supplement provided that "[**t**]**he**

---

[4]  *See* Docket # 16 ("Notice of Chapter 11 Case") at 3.

[5]  Docket # 70.

[6]  *Id.* at 2 ¶ 1.

[7]  Docket # 93.

[8]  *See* Docket # 94.

[9]  *See* Docket # 93 at 7 ¶ 1.2.38 ("**Exhibit**" means any document identified as an "exhibit" in this Plan, as modified, amended, or supplemented.").

[10]  *See* Docket # 111.

4

**documents contained in this Plan Supplement are integral to and part of the Plan, and if the Plan is confirmed, shall be approved in the order confirming the Plan**."[11]  St. James reserved its "right to alter, amend, modify or supplement any document in the Plan Supplement as provided by the Plan[.]"[12]  The Plan proposed that St. James would reorganize its debts and continue to operate its skilled nursing care facility.

Also on August 12, 2016, the Patel-Related Entities filed an objection to confirmation of the Plan (the "Patel Entities Objection"), arguing, in relevant part, that the Plan and the Disclosure Statement did not provide "adequate information" within the meaning of 11 U.S.C. § 1125(a)(1) regarding St. James's "operations, how it came to experience significant tax problems and uncollectible accounts receivable and how its future operations will not suffer from the same problems."[13]  The Patel-Related Entities argued that such "information [was] necessary to assess whether there are adequate means for the Debtors to comply with the Plan, as well as determine the feasibility of the Plan & Disclosure Statement."[14]  The Patel-Related Entities argued that "the Plan described is facially unconfirmable as it provides neither adequate means for its implementation nor feasibility."[15]

On August 19, 2016, St. James filed its final report on tabulation of votes cast by the creditors of the Plan.[16]

---

[11]  Docket # 111 at 2 ¶ 4 (bold in original).

[12]  *Id.* at 2 ¶ 5.

[13]  Docket # 108 at 13.

[14]  *Id.*

[15]  *Id.* at 14.

[16]  *See* Docket # 118.

On August 24, 2016, the Court held a hearing on the confirmation of the Plan. As the Court later stated, by the end of the August 24, 2016 confirmation hearing, it was clear that the Patel Entities Objection

> boiled down to two arguments: namely, that the Debtors have not demonstrated that the Plan meets the feasibility requirement of 11 U.S.C. [§] 1129(a)(11); and that the Debtors have not proposed the plan in good faith, as required by 11 U.S.C. § 1129(a)(3). And the latter objection, lack of good faith, is based on the alleged fact that the Debtors are proposing a plan lacking feasibility.[17]

The August 24, 2016 confirmation hearing was continued for an evidentiary hearing.

On August 25, 2016, the Court entered an order for further proceedings regarding confirmation of the Plan.[18] The August 25, 2016 Order noted: "Many parties filed objections to confirmation [of the Plan], all of which reportedly have been resolved by agreement, except the objections of the Wayne County Treasurer; and the joint objections of VPH Pharmacy, Inc.; Reliance Pharmacy, Inc.; Rajesh Patel; and Chiman Patel (collectively the 'Patel-Related Entities')."[19] The August 25, 2016 Order, in relevant part, scheduled a further hearing on confirmation of the Plan and on the Trustee Appointment Motion for September 13, 2016, and granted the Patel-Related Entities and the Wayne County Treasurer "leave to conduct discovery, limited to the issue of feasibility [of the Plan.]"[20]

On September 13, 2016, the Court held and concluded an evidentiary hearing on the

---

[17] "Opinion Regarding Confirmation of the Debtors' Proposed Plan, And Certain Other Related Matters" (Docket # 155) at 3-4 (footnotes omitted). The Court explained in that opinion that "some of the written objections by the Patel-Related Entities, "were mooted by later events," such as when the objection based on the Plan's violation of the absolute priority was mooted, when all of the impaired classes voted to accept the Plan. (*See id.* at 5 n.5.)

[18] Docket # 123 (the "August 25, 2016 Order").

[19] *Id.*

[20] *Id.* at ¶¶ 1-2.

6

confirmation of the Plan, and took the matter under advisement. The Court stated that the Trustee Appointment Motion would await further proceedings after the Court issued a written opinion regarding confirmation of the Plan.

On September 14, 2016, all of the objecting parties, except the Patel-Related Entities and Rehab Solutions, Inc. ("Rehab Solutions"), an unsecured creditor that filed a "'concurrence' in" the Patel Entities Objection,[21] signed and filed a stipulation for entry of an order confirming the Plan (the "OCP Stipulation").[22] Attached to the OCP Stipulation was a proposed order confirming the Plan (the "Confirmation Order"). The Confirmation Order modified the Plan in order to resolve and settle the objections of the objecting parties that signed it, but not in a way that adversely impacted the treatment of any claims or interests under the Plan.[23]

On September 16, 2016, the Court filed an opinion regarding confirmation of the Plan (the "Confirmation Opinion").[24] In the Confirmation Opinion, the Court noted that all of the objections to the Plan "[had] been resolved by agreement," except the Patel Entities Objection, and the objection of Rehab Solutions.[25] The Court also noted that "Rehab Solutions did not appear at or participate in the August 24, 2016 confirmation hearing" nor did it "appear at or participate in the September 13, 2016 evidentiary hearing on confirmation of the Plan.[26] The Court noted further that "[t]he agreed settlement of the resolved objections is reflected in the

---

[21] *See* Docket # 116.

[22] Docket # 149.

[23] *See* Docket # 149 at ¶¶ 4-19.

[24] Docket # 155.

[25] *Id.* at 1-2.

[26] *Id.* at 2.

provisions of a proposed [Confirmation O]rder . . . attached to the . . . OCP Stipulation . . . [and that a]ll objecting parties except the Patel-Related Entities and Rehab Solutions signed the OCP Stipulation."[27]

In the Confirmation Opinion, the Court stated that "[u]nder the Plan there are seven classes of claims and one class of interest holders as to St. James (Classes I through VIII)" and that "all classes have accepted the Plan."[28]  The Court stated further:

> To the extent the Patel-Related Entities and Rehab Solutions have allowed claims in these two jointly-administered cases, it is undisputed that those claims are general (non-priority), unsecured claims against the Debtor St. James. Such claims are classified and treated in Class VII of the Plan. That impaired class voted to accept the Plan, despite the fact that VPH Pharmacy, Inc. (one of the Patel-Related Entities) and Rehab Solutions voted to reject the Plan.[29]

In the Confirmation Opinion, the Court held that the St. James had "met [its] burden of proving the feasibility of [its] proposed Plan as Amended, as required by 11 U.S.C. § 1129(a)(11)," and that "under the totality of the circumstances, [St. James's] Plan as Amended ha[d] been proposed in good faith" within the meaning of 11 U.S.C. § 1129(a)(3).[30] The Court stated that for this and the other reasons stated in the Confirmation Opinion, it would (1) grant final approval to St. James's disclosure statement; (2) overrule the Patel Entities Objection and the concurrence by Rehab Solutions in the Patel Entities Objection, to the extent that the written objections had not been abandoned or rendered moot; (3) confirm the Plan "with

---

[27]  *Id.*

[28]  *Id*. at 4.

[29]  *Id.* (footnote omitted).  VPH Pharmacy, Inc. was the only one of the Patel-Related Entities that filed a proof of claim in the case.  (*See* Claim Nos. 5-1 (non-priority unsecured claim of VPH Pharmacy, Inc. in the amount of $235,321.86)).

[30]  *Id.* at 10-11.

amendments to that Plan, all as reflected in the OCP Stipulation and proposed [C]onfirmation [O]rder attached to that stipulation;" (4) enter the Confirmation Order "[a]fter making non-substantive revisions to the . . . proposed [C]onfirmation [O]rder;" and (5) enter a separate order denying the Trustee Appointment Motion and "and denying, as moot, discovery-related motions filed by the Debtors on August 31, 2016 and filed by the Patel-Related Entities on September 2, 2016." [31]

Also on September 16, 2016, the Court entered an order confirming St. James's Plan and an order denying the Trustee Appointment Motion.[32]

Paragraph 8.1 of the confirmed Plan provides:

> 8.1 **VESTING OF PROPERTY.** Except as provided in Articles III and IV, title to any property of the Debtors (including all Causes of Action and Avoidance Actions) existing on the Effective Date shall vest in the Reorganized Debtor upon the Effective Date of the Plan. The Reorganized Debtor shall be discharged from its status as the Debtors-in-Possession. As of and following the Effective Date, the Reorganized Debtor may operate its business, if any, and use, acquire, and dispose of property and settle and compromise Claims or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.[33]

On September 18, 2016, Bankruptcy Noticing Center mailed to all creditors the Clerk's notice that stated, in relevant part, that the Plan had been confirmed on September 16, 2016, that [t]he Court will find that the estate has been fully administered and will enter a final decree closing the case in 60 days unless, within that time, an objection is filed."[34]

---

[31] *Id.* at 2, 11-12,

[32] Docket ## 156, 157.

[33] Docket # 93 at 47 ¶ 8.1.

[34] *See* Docket # 158.

No one filed an objection to closing the case, and on November 16, 2016, St. James's bankruptcy case was closed. There have not been any post-confirmation requests to modify the Plan, and the Plan has not been modified since it was confirmed.

## C. The bankruptcy case of Cadillac Nursing Home, Inc. (St. Francis)

On February 8, 2016, before St. James filed its bankruptcy case on February 22, 2016, St. Francis filed a voluntary petition for relief under Chapter 11, commencing Case No. 16-41554. Patel, VPH Pharmacy, Inc., Rajesh Patel, and the Reliance Group, Inc. each filed a proof of claim in the St. Francis case.[35] St. Francis filed objections to the proof of claim of Patel, alleging, in relevant part, that he was not a creditor of St. Francis.[36]

On May 23, 2016, St. Francis filed its first amended combined plan and disclosure statement (the "St. Francis Plan").[37] On May 24, 2016, the Court entered an order granting preliminary approval of the St. Francis disclosure statement.[38]

On June 7, 2016, the Patel-Related Entities filed a motion for the appointment of a Chapter 11 Trustee in the St. Francis bankruptcy case.[39] On June 27, 2016, the Patel-Related Entities filed an objection to confirmation of the St. Francis Plan.[40] Many other parties also filed objections to the St. Francis Plan.

---

[35] *See* Claim Nos. 6-1 (unsecured claim of Patel in the amount of $75,330.58 based on a promissory note in the face amount of $30,000); 7-1 (unsecured claim of VPH Pharmacy, Inc. in the amount of $325,566.93); 8-1 (unsecured claim of Rajesh Patel in the amount of $282,872.70); and 9-1 (unsecured claim of Reliance Group, Inc. in the amount of $325,566.93), all filed in Case No. 16-41554.

[36] Docket ## 174, 179 in Case No. 16-41554.

[37] Docket # 94 in Case No. 16-41554.

[38] Docket # 97 in Case No. 16-41554.

[39] Docket # 112 in Case No. 16-41554.

[40] Docket # 133 in Case No. 16-41554.

Ultimately, the Court scheduled an evidentiary hearing regarding confirmation of the St. Francis Plan, limited to several specified issues.[41] The evidentiary hearing was held on September 20 and 27, 2016.

### 1. Settlement placed on the record in the St. Francis bankruptcy case

During the evidentiary hearing in the St. Francis bankruptcy case, on September 27, 2016, a settlement was orally placed on the record between the Mali Family Entities and the Patel Family Entities (the "September 27, 2016 Settlement"). The September 27, 2016 Settlement resolved all of the remaining objections to confirmation of the St. Francis Plan,[42] and to the confirmation of a Chapter 11 plan in a bankruptcy case filed by St. Jude Nursing Center, Inc. ("St. Jude"),[43] another one of the Mali Family Entities. The September 27, 2016 Settlement also resolved the Patel-Related Entities' motions for the appointment of a Chapter 11 trustee in the St. Francis case, and certain other pending matters in the St. Francis case.[44]

The essential terms of the September 27, 2016 Settlement placed on the record were:

---

[41] Docket # 203 in Case No. 16-41554.

[42] Many of the objections to confirmation of the St. Francis Plan had already been resolved by the "Amended Stipulation for Entry of Order Confirming Debtor's First Amended Combined Plan of Liquidation and Disclosure Statement," filed on September 26, 2016 (Docket # 231 in Case No. 16-41554).

[43] St. Jude filed a voluntary petition for relief under Chapter 11 on February 18, 2016, commencing Case No. 16-42116. That was St. Jude's second Chapter 11 bankruptcy case. St. Jude's first Chapter 11 case was filed on February 22, 2012 (Case No. 12-43959).

[44] The other matters pending in the St. Francis bankruptcy case were (1) St. Francis's objections to the claims of Patel (Docket ## 174, 179 in Case No. 16-41554); (2) St. Francis's motion to remove Patel from the Unsecured Creditor's Committee (Docket # 177 in Case No. 16-41554); (3) a motion by St. Francis "to [d]esignate the [v]otes of Reliance Pharmacy, Inc. . . . and VPH Pharmacy, Inc. . . . rejecting the Debtor's Plan . . . under 11 U.S.C. § 1126(e) for purposes of determining under 11 U.S.C. § 1126(f) whether Class VI voted in favor of the Debtor's Plan" (Docket # 205 in Case No. 16-41554); and (4) a motion by St. Francis "to [d]esignate the [v]otes of . . . Patel . . . and Rajesh Patel . . . rejecting the Debtor's Plan . . . under 11 U.S.C. § 1126(e) for purposes of determining under 11 U.S.C. § 1126(f) whether Class VI voted in favor of the Debtor's Plan" (Docket # 206 in Case No. 16-41554). *See* Tr. of Sept. 27, 2016 Hr'g (Docket # 241 in Case No. 16-41554) at 13-18, 32.

- Patel would have an allowed claim in the St. James bankruptcy case in the amount of $340,000.00, funded by St. James or another third party, to be paid as follows: $100,000.00 down, to be deposited in the client trust fund account of St. James's attorneys, Schaefer and Weiner, PLLC, on or before October 14, 2016, and then monthly payments of $3,333.33 for 72 months beginning on November 1, 2016, also to be deposited in the client trust fund account of Schafer and Weiner, with Schafer and Weiner being responsible to make payments by wire or ACH transfer or by check from its client trust fund account to the client trust fund account of attorney Jerome Frank's law firm or the client trust fund of another attorney licensed to practice law in Michigan who Patel designates to receive such payments.[45]  A stipulation and order regarding this claim was to be filed in the St. James bankruptcy case after a written settlement agreement was executed.[46]

- All objections to the confirmation of the St. Francis Plan and to the Chapter 11 plan in the St. Jude bankruptcy case were withdrawn.[47]

- Motions to appoint a Chapter 11 trustee in the St. Francis and the St. Jude bankruptcy cases were withdrawn.[48]

- All votes to reject the St. Francis Plan and the Chapter 11 plan in the St. Jude bankruptcy case were changed to votes to accept those plans.[49]

- In both the St Jude and St. Francis bankruptcy cases, there was to be a mutual release by all parties, including all of the Mali Family Entities and Patel Family Entities and any insider, as defined under the Bankruptcy Code, of any of these entities, of any and all claims whatsoever, except for Patel's claim to the $340,000.00 payment.[50]

- In the event of a default in payment to Patel, "Patel shall have the right to a hearing for the appointment of a Chapter 11 trustee. And the failure to pay is grounds for that trustee."[51]  However, Patel will not have such right unless and until he first provides written notice of no less than 30 days to St. James and Schafer and Weiner, PLLC of

---

[45] *See* Tr. of Sept. 27, 2017 Hr'g (Docket # 241 in Case No. 16-41554) at 8-9.

[46] *Id.* at 35-36.

[47] *Id.* at 9.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 9-10.

[51] *Id.* at 10.

such default.[52]

- All proceedings and lawsuits between the parties, including any adversary proceeding in the bankruptcy court (including Adversary No. 16-4209),[53] and any lawsuit in Oakland County[54] or Wayne County Circuit Courts, whether removed to this Court or not, would be "mutually and immediately dismissed with prejudice."[55]

After placing the terms of the September 27, 2016 Settlement Agreement on the record, Bradley Mali, Roger Mali, Patel, Amee Patel, Rajesh Patel, and Deven Patel, "on behalf of themselves personally as well as [on] behalf of any companies involved," including the Mission Point companies, each confirmed on the record that they understood what the essential terms of the September 27, 2016 Settlement Agreement were, that they had agreed to those terms, that they agreed to be bound by the terms placed on the record that day, and that they would work in good faith to execute a written settlement agreement.[56]

### 2. Confirmation of the St. Francis Chapter 11 plan of liquidation

On October 13, 2016, the Court entered an order confirming the first amended combined plan of liquidation and granting final approval of the disclosure statement in the St. Francis

---

[52] *Id.*

[53] On February 18, 2016, in the St. Francis bankruptcy case, VPH Pharmacy, Inc. filed notice of removal of a lawsuit it had filed in Wayne County Circuit Court on February 27, 2015 against St. Francis, St. James, St. Jude, and St. Anne's Convalescent Center (Wayne County Circuit Case No. 15-002534-CK BC), commencing Adversary Proceeding No. 16-4209. St. Anne's Convalescent Center had filed a voluntary petition for relief under Chapter 11 on March 24, 2015, commencing Case No. 15-44578 (Shanta Corporation d/b/a St. Anne's Convalescent Center), which was still pending at the time of the removal. Shortly after the removal, on February 22, 2016, as stated above, St. James filed its own voluntary petition for relief under Chapter 11.

[54] There was a case pending in Oakland County Circuit Court (Case No. 2015-148749-CB) (*Rajesh Patel et al. v. Bradley J.M. Mali, et al.*).

[55] Tr. of Sept. 27, 2017 Hr'g (Docket # 241 in Case No. 16-41554) at 11.

[56] *Id.* at 10-11, 13, 21-29.

bankruptcy case.[57]  On October 14, 2016, the Court entered an order deeming certain

motions/claim objections filed in the St. Francis case and discussed at the September 27, 2016

hearing to be withdrawn.[58]  On May 9, 2017, the St. Francis bankruptcy case was closed.

**D. The bankruptcy case of VPH Pharmacy, Inc.**

On January 13, 2017, several months after the September 27, 2016 Settlement Agreement

had been placed on the record in the St. Francis bankruptcy, VPH Pharmacy, Inc. ("VPH") filed a

voluntary petition for relief under Chapter 11, commencing Case No. 17-30077.  The case was

converted to Chapter 7 on June 30, 2017, and a Chapter 7 trustee was appointed.

**E.  The written settlement agreement**

On January 30, 2017, the written settlement agreement memorializing the September 27,

2016 Settlement was executed by the Mali Family Entities and the Patel Family Entities (the

"Settlement Agreement").  It stated that it resolved (1) certain claims that Patel Family Entities

held "against certain, but not all of the Mali [Family] Entities;" and (2) certain claims that Mali

Family Entities held against "certain but not all of the Patel [Family] Entities."[59]  The Settlement

Agreement noted, in relevant part, that, as agreed to in the September 27, 2016 Settlement

Agreement, all pending litigation between the parties had been dismissed, with prejudice; all

---

[57]  Docket # 237 in Case No. 16-41554.

[58]  Docket # 238 in Case No. 16-41554 (deeming motions filed at Docket Nos. 112, 119, 174, 177, 179, 205, and 206 withdrawn).

[59]  *See* Settlement Agreement (Ex. 6A to Docket # 188) at 1-2. The Mali Family Entities who are parties to the Settlement Agreement are listed as Cadillac Nursing Home, Inc., d/b/a St Francis Nursing Center; St. Jude Nursing Center, Inc.; St. James Nursing and Physical Rehabilitation Center, Inc.; Mission Point Management Systems. LLC; Mission Point of Detroit, LLC; and any other Mission entities owned or controlled by H. Roger Mali; Bradley Mali, an individual; and Hari Mali, II. an individual, a/k/a H. Roger Mali.  The Patel Family Entities who are parties to the Settlement Agreement are listed as Chiman Patel; Rajesh Patel; Amee Patel; Amee V. Patel Revocable Living Trust, u/a/d Sept. 26, 2008, as may be amended, restated or modified; Devenkummar Patel a/k/a Devcn Patel; Reliance Pharmacy, Inc.; and VPH Pharmacy. Inc.; and any other entity controlled or managed by any of the Patel Family Entities.

objections to confirmation of the plans filed by the Patel-Related Entities in the St. James, St. Francis, and St. Jude cases had been withdrawn;[60] St. Francis's objection to Patel's Claim No. 6, and its motion to remove Patel from the Unsecured Creditors Committee had been withdrawn in the St. Francis bankruptcy case; the motions to designate the votes of the Patel-Related Entities to reject the St. Francis Plan and the St. Jude Plan had been deemed as votes to accept those plans in the St. Francis and the St. Jude bankruptcy cases, and the plans in each of those cases had been confirmed; that the Patel-Related Entities' motions in the St. Francis and St. Jude bankruptcy cases to appoint a Chapter 11 trustee had been deemed withdrawn;[61] and that Patel "shall be deemed to have an Allowed Claim in the St. James Bankruptcy in the amount of $340,000."[62]

The Settlement Agreement noted that "St. James was required to deposit $100,000 into the client trust account of their counsel, Schaefer and Weiner, on or before October, 14, 20[1]6 (the 'Deposit')."[63]  This payment apparently had not been made, because the Settlement Agreement stated that the parties had conducted a further mediation on January 19, 2017 and had additional discussions thereafter" and that in accordance to those discussions,  the Mali Family Entities had made (a) a $10,000 payment as part of the Deposit and "(b) a third monthly installment as defined in paragraph 2(b) below, attributable to the payment agreed to be paid on

---

[60]   This statement in the Settlement Agreement is inaccurate — the objection of the Patel-Related Entities to the St. James Plan was overruled in the St. James case, after an evidentiary hearing; it was not withdrawn.

[61]   *See* Settlement Agreement (Ex. 6A to Docket # 188) at 2-3.

[62]   *Id.* at 3 ¶ 1.

[63]   The date in the Settlement Agreement for payment of the $100,000 was stated as "October 14, 2006," which was clearly a typographical error.

January 1, 2017."[64] The written Settlement Agreement set forth how the balance owing to Patel would be paid:

> 2.    The Allowed Claim of [Patel] shall be paid as follows:
>
> > a.    St. James (or a third party on its behalf) shall pay the remainder of the [$100,000] Deposit into the client trust account of its counsel immediately upon execution and delivery of this Agreement by all Parties, to the Party's respective counsel and entry of an Order in VPH's bankruptcy case, approving the execution of this Settlement Agreement, which funds shall then be paid from its counsel's account to the client trust account of Patel Counsel [(Jerome Frank, Esq. of Frank & Frank, PLLC)] immediately upon ACS clearance;
>
> > b.    The balance of $240,000 shall be payable by St. James (or a third party on its behalf) in seventy-two (72) equal monthly installments of $3,333.33, which payments will commence as of November 1, 2016, and be due the first day and each subsequent month thereafter until the remaining balance of $240,000 is paid in full (each payment date, a "Due Date");
>
> 3.    All payments due hereunder from St. James shall be deposited with its counsel, Schafer and Weiner. PLLC or with Roger [Mali's] counsel. Wernette Heilman PLLC (collectively, "Mali Counsel"), into their counsel's client trust account before the Due Dates. All amounts deposited with Mali Counsel pursuant to this Agreement shall be deemed to be deposited with the payer's explicit instruction and authority to Mali Counsel to pay such deposited funds over to Patel Counsel pursuant to the terms of this Agreement. All payments shall be made by Mali Counsel to the client trust account of Patel Counsel on the Due Dates. In the event that any such counsel should resign from representation, or otherwise cease to be counsel for their respective clients. such counsel shall be immediately replaced by their respective clients, notice shall be given to the opposing party, and all future payments shall be deposited in the client trust account of new counsel for distribution or receipt (depending

---

[64]  Settlement Agreement (Ex. 6A to Docket # 188) at 3.

upon counsel being replaced).[65]

The Settlement Agreement described what constituted a default, and the means by which the parties could enforce their rights:

> 5. St. James shall be deemed to be in default of its obligations hereunder if any of the funds required to be deposited into the client trust account of Patel Counsel, or its successor, arc not made on Due Date. Upon a default in any payment, [Patel] shall provide written notice of the default to St. James, and Mali Counsel (a "Default Notice"). Thirty days after receipt of a Default Notice (the "Cure Period"), [Patel] may file a motion for appointment of a trustee in the St. James bankruptcy proceeding. If there is a failure by St. James to pay all amounts due hereunder which are not cured during the Cure Period, [Patel] shall have the right to a hearing for a Chapter 11 trustee and the failure to pay shall be grounds for that trustee.[66]
>
> . . . .
>
> 10. Any action to enforce this Settlement Agreement shall be brought in the Bankruptcy Court, which shall retain jurisdiction to address same. In the event that the Bankruptcy Court concludes that it does not have jurisdiction to hear and determine any issues pertaining to this Settlement Agreement, then the matter shall be brought in any state or federal court of competent jurisdiction within the geographic area covered by the United States District Court for the Eastern District of Michigan. In the event of any action by either party to enforce this Settlement Agreement, the successful party shall have the right to payment of its reasonable attorneys' fees, as determined by the court.[67]

### F. The bankruptcy court in VPH's converted Chapter 7 case authorized the Chapter 7 trustee to enter into the Settlement Agreement on behalf of VPH.

On August 29, 2017, in VPH's Chapter 7 bankruptcy case, the Court entered an order granting the Chapter 7 trustee's motion under Fed. R. Bankr. P. 9019 to authorize and approve

---

[65] *Id.* at 3-4.

[66] *Id.* at 5.

[67] *Id.* at 5, 7-8.

the Settlement Agreement (the "August 29, 2017 VPH Order Approving Settlement").[68] That order authorized the Chapter 7 trustee "to enter into the Settlement Agreement on behalf of [VPH,]" and required all money being held by counsel for the Mali Family Entities to be turned over to the Chapter 7 trustee "to be held in the [t]rustee's bonded bank account" until further order of the bankruptcy court.[69] The August 29, 2017 VPH Order Approving Settlement further stated: "This Court retains jurisdiction over any and all disputes arising or otherwise relating to the construction, performance, and enforcement of the terms of this Order and the Settlement Agreement."[70]

The record does not show whether the Chapter 7 Trustee in the VPH case ever actually signed the Settlement Agreement. The only copy of that document filed by the parties in this case is not signed by the VPH Trustee.[71]

## G. Patel's first notice of default under the Settlement Agreement

Patel alleges that St. James only "made one payment of $10,000 in January 2017, instead of the $100,000 lump sum required by the Settlement Agreement, and two monthly payments totaling $6,666.66."[72] Therefore, St. James paid only $16,666.66 of Patel's $340,000 claim, leaving $323,333.34 still owing on that claim.[73]

On August 31, 2017, Patel sent a notice of default under the Settlement Agreement to St.

---

[68] *See* Docket ## 328, 386, in Case No. 17-30077.

[69] Docket # 386 at ¶¶ 2-3.

[70] *Id.* at ¶ 4.

[71] Docket # 188, Ex. A; Docket # 191-7 (Ex. 6A to Docket # 191).

[72] Patel Mot. (Docket # 188) at ¶ 8.

[73] *See id.*

James and to counsel for St. James.[74]  The Notice provided, in relevant part:

> Enclosed please find a copy of the Order Approving Settlement entered by the United States Bankruptcy Court for the Eastern District of Michigan, filed in Case No. 17-30077.  I also enclose a copy of the Settlement Agreement entered into between the parties as of January 20, 2017.  Pursuant to the provision of the Settlement Agreement, the balance of $90,000 due for the deposit that was to have been made last October, is now due and owing.

> In addition to the remaining balance of the deposit being due and owing, monthly payments of $3,333.33, have been due on the first of the month and have gone unpaid since January 1, 2017 to date, for a total of monthly payments due of $26,666.64.

> Please consider this demand letter one that gives the thirty-day Notice of Default, as required under the Settlement Agreement, demanding payment in full in the total amount of $116,666.64, pursuant to the terms of the Settlement Agreement.

> Hopefully, this matter will be resolved consensually.[75]

## H.  The Wayne County Circuit Court Receivership Order

In 2018, a lawsuit was filed in the Wayne County, Michigan, Circuit Court ("WCCC") by Plaintiffs Mohammad A. Qazi, Trustee of the Mohammad A. Qazi Living Trust dated September 26, 1997 and St. James Real Estate Company, LLC, against Defendants St. James, MPMS St. James Acquisition, LLC ("Acquisition"), MPMS St. James Real Estate Acquisition, LLC ("Real Estate Acquisition"), Hari S. Mali, II a/k/ H. Roger Mali, and Mission Point Management Services, LLC (WCCC Case No. 2018-009830, the "Receivership Case").

On October 30, 2018, the WWCC entered a stipulated order (the "Receivership Order"):

> appointing Kevin English as the receiver [(the "Receiver")] over Acquisition, Real Estate Acquisition, and [St. James] (collectively, the "Entities") and over all of the assets owned by each of the Entities

---

[74]  *See* Ex.6C to Patel Mot. (Docket # 188).

[75]  *Id.*

including, without limitation, the real and personal property owned by Real Estate Acquisition located at 15063 Gratiot Avenue, Detroit, Michigan (the "Real Estate") and the personal property owned by [St. James] located at the Real Estate (Each of the Entities and all assets owned by each of the Entities are referred to herein, collectively, as the "Receivership Estate:)[.][76]

The Receivership Order provided that the WCCC "assume[s] and assert[ed] jurisdiction over, and grant[ed] the Receiver exclusive control of[,] the Receivership Estate as set forth in [the Receivership] Order."[77]

The Receivership Order further provided, in relevant part:

> 7. The Receiver is granted all powers and authority necessary to manage, preserve and operate the Receivership Estate provided, however, the receivership over Acquisition is for the limited purpose of effecting a sale of the equity interests in [St. James] and/or Real Estate Acquisition in the event that a potential purchaser desires to structure its transaction as an acquisition of any of said equity interests. During his appointment, and unless otherwise ordered by this Court, the Receiver shall not cease operations of [St. James]. For clarity, during the appointment of the Receiver, the Entities shall have no right or power to exercise any control of any assets of the Receivership Estate, to incur any debt or obligation on behalf of the Receivership Estate, or to interfere with the Receiver's rights and powers under this order. Notwithstanding anything to the contrary in this Order, each of the Entities retain their legal existence separate and apart from the Receivership Estate with the power and right to retain and direct professionals and to petition the Court, file motions and objections, and to otherwise appear before this Court on their own behalf and for the purpose of advancing their own interests. The filing of any such papers and any such appearances before the Court shall not constitute interference with the Receiver for purposes of this Order.

> 8. The Receiver shall retain managerial and operational control of the Receivership Estate in the event of the filing of a proceeding under Title 11 of the U.S. Code by or against Real Estate Acquisition, [St. James], or Acquisition.

---

[76] *See* Ex. 6B to Patel Mot. (Docket # 188).

[77] *Id*. at ¶ 6.

9.  During the appointment of the Receiver, all creditors of Real Estate Acquisition or [St. James], and any other creditor that has any claims on any asset within the Receivership Estate are hereby stayed and enjoined from taking any action to collect, assess, liquidate, commence or continue any action, lawsuit or proceeding, or otherwise take any action against Real Estate Acquisition and Operator or any asset within the Receivership Estate (the "Receivership Stay"), except as permitted by this Order or a subsequent order of this Court.  Any request for such subsequent order must be made by an appropriate motion and hearing with a minimum of 14-days' notice to the Receiver and to all parties to this lawsuit.

. . . .

11.  The Receiver shall have full authority to operate the business of the Receivership Estate and to approve all disbursements from and obligations incurred by the Receivership Estate.  The Receiver may retain current management of each of the Entities on commercially reasonable terms, including payment of salary to Bradley Mali not to exceed $10,000 per month and not to be reduced below $6,000 per month and payment of a commercially reasonable management fee to Mission Point Management Services, LLC, all as determined in the business judgment of the Receiver.  The Receiver has indicated that he intends to retain current management for each of the Entities unless, in the exercise of his business judgment, current management acts (or fails to act) during his appointment to the detriment of the Receivership Estate.

. . . .

14.  Promptly upon appointment, the Receiver shall commence a sale process and shall be authorized to market and take any action necessary or beneficial to accomplish the sale of the Receivership Estate, with the intent to sell the business as a going concern ("Sale Process").  Parties to this lawsuit and affiliates of the parties may participate in the Sale Process and shall be accorded equal treatment with all other potential purchasers, with no preference, or prejudice to any such party solely as a result of the parties' participation in this lawsuit. Any sale of all or part of the Receivership Estate shall be subject to Court approval upon motion by the Receiver.

. . . .

19. The Receiver shall continue to act as Receiver until (i) the Receivership Estate is fully administered and all Proceeds have been disbursed in accordance with this Order and any subsequent order of the Court, (ii) the Receivership is terminated due to the indefeasible payment of Defendants' obligations to Plaintiffs and payment of Receiver's approved fees and expenses, (iii) the Receiver resigns his position, or (iv) the Receiver is removed by further Order of this Court. In the event the Receiver resigns or is removed by further Order of this Court, the Court shall appoint a new receiver as agreed to by Plaintiffs and Defendants or, in the absence of such agreement, the Court shall appoint a receiver of the Court's choosing.[78]

## I. The Chapter 7 trustee in the VPH bankruptcy case waived all rights to money owed under the Settlement Agreement (with the exception of the $16,666.66 paid by or on behalf of St. James then being held by Chapter 7 trustee).

On February 13, 2017, the Chapter 7 trustee in the VPH bankruptcy case filed a motion under Fed. R. Bankr. P. 9019 to authorize a settlement agreement by and between himself and the Patel Family Entities (the "VPH Trustee Settlement Motion").[79] The Chapter 7 trustee stated in the VPH Trustee Settlement Motion that the settlement was "expected to result in the amount of $300,000 being paid to the bankruptcy estate and the dismissal of eight jointly administered adversary proceedings."[80] Among other terms, the Chapter 7 trustee in the VPH bankruptcy case waived all right to any money owed under the Settlement Agreement, with the exception of $16,666.66 paid by or on behalf of St. James, which was being held by the Chapter 7 trustee in the VPH bankruptcy case.[81]

On March 6, 2019, a creditor filed an objection to VPH Trustee Settlement Motion.[82] But

---

[78] Receivership Order (Ex. 6B to Docket # 188) at pdf pp. 47-50.

[79] Docket # 653 in Case No. 17-30077.

[80] *Id.* at 2 ¶ 1 ("**PRELIMINARY STATEMENT**").

[81] *Id.* at pdf pp. 27-28 ("*Mali Settlement Monies*").

[82] Docket # 666 in Case No. 17-30077.

on May 28, 2018, the court in the VPH bankruptcy case entered an order granting the VPH Trustee Settlement Motion.[83]

**J.  Patel's efforts to enforce the Settlement Agreement before seeking relief in this Court**

"On or about September 30, 2020[,] counsel for . . . Patel . . . sought concurrence from bankruptcy counsel for St. James for a Motion to Enforce Settlement Agreement, which he intended to file in the VPH [b]ankruptcy [c]ase.  This request for concurrence was forwarded to receivership counsel for St. James, Ryan Heilman[.]"[84] Mr. Heilman responded to such request by declining to concur with the relief requested in the Motion to Enforce Settlement Agreement, because it appeared to him "that filing this motion would be an act to commence a proceeding against St. James and this act is expressly stayed by the terms of the Receiver [Order]."[85]  Mr. Heilman also expressed his doubt over whether "it [was] appropriate or even possible to 'remove jurisdiction' from one court to another by stipulation."[86]  He stated further that it was his "understanding . . . that a court either has jurisdiction over a matter or not, and jurisdiction cannot be created by agreement."[87] Mr. Heilman requested that, if counsel for Patel believed that his statement of law was incorrect, that counsel for Patel provide him with the authorities on which he was relying.[88]  Mr. Heilman also expressed his doubt over whether "it is appropriate for a federal court to tell a state court what matters should or should not be considered in a

---

[83]  Docket # 708 in Case No. 17-30077.

[84]  Docket # 191 at 7 ¶ 21 (citing to attached Exhibit 6-C).

[85]  Docket #191-9.

[86]  *Id.*

[87]  *Id.*

[88]  *Id.*

receivership matter."[89]

On October 6, 2020, instead of filing a Motion to Enforce Settlement Agreement in the VPH bankruptcy case, Patel filed a document entitled "Non-Party's Motion to Intervene to Lift Stay" in the Receivership Case (the "Patel Lift-Stay Motion"), seeking to lift the Receivership Stay to enforce the Settlement Agreement.[90] On October 9, 2020, the defendants in the Receivership Case filed a response to the Patel Lift-Stay Motion.[91] In their response, the defendants objected to Patel's "requested intervention and relief [from the Receivership Stay] because it would (i) interfere with the Receiver's administration of the [R]eceivership [E]state, (ii) needlessly waste the receivership resources, and (iii) would be an imprudent use of judicial resources."[92]

On October 23, 2020, the WCCC in the Receivership Case held a hearing on the Patel Lift-Stay Motion.[93] During that hearing, WCCC denied the Patel Lift-Stay Motion.[94]

On March 24, 2021, Patel sent another notice of default and failure to cure to counsel for St. James and St. James.[95] Also on March 24, 2021, counsel for Patel sought the concurrence

---

[89] *Id.*

[90] *See* Docket # 191-10.

[91] *See* Docket # 191-11 ("Defendants' Response to Non-Party Chiman Patel's Motion to Intervene to Lift Stay").

[92] *Id.* at 2 ¶ 5.

[93] *See* Docket # 191-12 (Tr. of Oct. 23, 2020 Hr'g on the Patel Lift-Stay Mot. in Receivership Case). The Court notes that the first page of the transcript of the October 23, 2020 hearing on the Patel Lift-Stay Motion mistakenly indicates that the hearing took place on October 23, **2021**. Page five of the transcript contains the correct date.

[94] *Id.* at 11, 17.

[95] Patel Mot. (Docket # 188) at ¶ 18.

from counsel for St. James with the Patel Motion.[96]  Counsel for St. James refused to concur and

stated, in relevant part, in an email on March 24, 2021:

> Please be advised that any collection efforts are currently stayed by
> [c]ourt order.  You client already sought and was denied relief or
> modification of the stay by the [WCCC].  Attached are some of the
> relevant court filings and communications. Mr. English is the
> [c]ourt-appointed [R]eceiver and Mr. Latiff is his attorney (both
> copied on this email).  I have also copied Eric Weiss who is the
> secured creditor/plaintiff in the [R]eceivership [Case] and had also
> objected to your client's request to proceed with collection
> activities.
>
> As discussed in the attached, your proposed motion would violate
> the terms of the [R]eceivership [O]rder.[97]

## K.  Patel's Motion in this Court

On May 27, 2021, Patel filed an ex parte motion to reopen this bankruptcy case for the

purpose of filing a motion to enforce the Settlement Agreement (the "Reopen Motion").[98]  Patel

asserted in the Reopen Motion that "[w]ithout this Court's intervention to reopen the bankruptcy

case and assert its jurisdiction over the Settlement Agreement, [his] allowed bankruptcy claim

will be lost."[99]

On June 1, 2021, the Court entered an order granting the Reopen Motion and reopening

this bankruptcy case.[100]  That order required Patel "[n]o later than June 16, 2021 . . . [to] file an

appropriate motion or adversary proceeding seeking relief."[101]

---

[96]  *See* Docket # 191-13.

[97]  *Id.*

[98]  Docket # 186.

[99]  *Id.* at ¶ 15.

[100]  Docket # 187 at ¶ A.

[101]  *Id.* at ¶ B.

Also on June 1, 2021, counsel for the defendants in the Receivership Case sent correspondence to new counsel for Patel "informing him of the Receivership Case and the Receivership Order."[102]  In an email dated June 1, 2021, counsel for the defendants in the Receivership Case informed new counsel for Patel, in relevant part, of the following:

> My office is representing St. James with respect to [the Receivership Case in WCCC]. I am writing to make you aware of a [state c]ourt Order entered by Judge Sullivan in the [R]eceivership [Case] that prohibits any actions by creditors to collect debts outside of the receivership process.  You are at least the third attorney that I have communicated with regarding Mr. Patel's claims.  The other two refused to file a motion with the Bankruptcy Court due to Judge Sullivan's [Receivership] Order.  I am attaching a copy of the [Receivership] Order and my communications with Mr. Patel's prior counsel.
>
> . . . .
>
> Further Mr. Patel's prior counsel sought leave to intervene in the [R]eceivership [Case] and was denied.  I am also attaching a copy of that transcript.
>
> As I advised each of Mr. Patel's prior attorneys, my client will seek all appropriate remedies before Judge Sullivan for any violation of the Receivership Order.  Your motion to reopen is an action to collect a debt and, thus, clearly violated that [Receivership] Order.  Please confirm by no later than close of business on Thursday that you will withdraw this motion.[103]

The June 1, 2021 email also quoted paragraph 9 of the Receivership Order, which related to the Receivership Stay.

On June 3, 2021, Patel filed the Patel Motion in this case, seeking the appointment of a Chapter 11 trustee.[104]  The Patel Motion alleges, in relevant part:

---

[102]  *See* Docket # 191 at 9 ¶ 28*; see also* Docket # 191-14.

[103]  Docket 191-14.

[104]  Docket # 188.

8. [St. James] made one payment of $10,000 in January 2017, instead of the $100,000 lump sum required by the Settlement Agreement, and two monthly payments totaling $6,666.66. In all, the [Mali Family Entities] paid $16,666.66 of the $340,000 claim (a clear showing of bad faith).[105]

Patel alleges that St. James made no further payments under the Settlement Agreement on the Patel $340,000 claim after the notices of default were sent.[106] Patel alleges that as of June 30, 2021, the balance owing on his $340,000 claim was $323,334, plus interest.[107] The Patel Motion seeks (1) the appointment of a Chapter 11 trustee in this case, "who shall investigate whether the debtor has funds that are subject to the jurisdiction of this Court, and administer any such funds" and (2) reasonable attorney fees and costs he incurred in enforcing the Settlement Agreement.[108]

On June 4, 2021, counsel for the Receiver sent an email to counsel for Patel, reiterating all of the information already provided to various attorneys representing Patel regarding the Receivership Case and the Receivership Order. The email stated, in relevant part:

Your action to re-open the Bankruptcy case for the purpose of pursuing a claim against St. James is a direct violation of Judge Sullivan's [Receivership] Order. As such, and as your client was informed multiple times by both Ryan Heilman and I, we intend to pursue sanctions as outlined below. If you immediately agree to close the bankruptcy case, we will hold off on petitioning the court until an order can be entered closing the matter. If however, you decide to pursue efforts in violation of the Receivership Order, we will take the action stated below."[109]

On July 17, 2021, the Debtor filed an objection to the Patel Motion (the "Debtor

---

[105] *Id.* at 3.

[106] *Id.* at 11, 20.

[107] *Id.* at ¶ 21.

[108] *Id.* at 5-6.

[109] Docket # 191-15.

Objection").[110]  The Debtor questions whether the Settlement Agreement which Patel is trying to enforce is valid.  The Debtor notes that although the court in the VPH bankruptcy case authorized the Chapter 7 trustee in that case to enter into the Settlement Agreement, "St. James is not aware whether the Chapter 7 [t]rustee ever actually executed the [S]ettlement [A]greement, and does not believe that any version of the . . . Settlement Agreement executed by the Chapter 7 [t]rustee has ever been presented."[111]  The Debtor also argues that (1) "Section 1104 [of the Bankruptcy Code] does not authorize the appointment of a Chapter 11 trustee after Plan confirmation;" (2) the relief requested by "Patel is barred by the Receivership Order;" and (3) this Court should abstain in favor of the WCCC in the Receivership Case.[112]

## L. The state court Receiver's Abstention Motion

On June 17, 2021, the state court Receiver over St. James filed the Abstention Motion in this bankruptcy case, seeking an order (i) abstaining from hearing the Patel Motion; (ii) closing this bankruptcy case; "(iii) requiring . . . Patel to pay Receiver's attorneys' fees and costs incurred by Receiver with respect to [the Patel] Motion;" and (iv) granting related relief.[113]  The Receiver alleges in the Abstention Motion that "[s]ince the entry of the Receivership Order, [he] has been diligently administering the [R]eceivership [E]state under the [WCCC's] direction for the benefit of all stakeholders[, and] . . .  has been marketing the Receivership Estate and taking all necessary actions to accomplish a sale in compliance with the Receivership Order."[114]

---

[110]  Docket # 193.

[111]  *Id.* at 4-5.

[112]  *Id.* at 6 (citation omitted).

[113]  Docket # 191 at 10 ¶ 32.

[114]  *Id.* at 7 ¶ 20, 13.

The Receiver relies on, and applies the factors this Court considered in *In re Packard Square, LLC*, 575 B.R. 768, 779 (Bankr. E.D. Mich. 2017) "in deciding whether to dismiss or abstain . . . under § 305(a)[.]"[115] The Receiver argues, in relevant part, that Patel's filing of the Patel Motion is a violation of the Receivership Stay; that Patel is "obstruct[ing] the Receiver's efforts to discharge his duties purusant to the Receivership Order;" "Patel's actions are harming the Receivership Estate and its other creditors due to the diversion of time and resources from the Recievership Estate to repeatedly address . . . Patel's meritless claims;" and that "[t]here would be no advantage to the creditors of St. James including . . . Patel, if this Court were to appoint a [t]rustee in this [b]ankruptcy [c]ase, as there are simply no assets to satisfy St. James's secured claims much less" the claims of general unsecured creditors, such as Patel.[116] The Receiver argues further:

> The economy and efficiency of administration would be better served by this Court abstaining from hearing Chiman Patel's Motion to Appoint a Trustee for the Investigation and Administration of Debtor's Assets, closing this Bankruptcy Case, and allowing the Receivership Case to continue. The [WCCC] and the Receiver are fully able to protect the interests of the parties in the Receivership Case, and federal proceedings are not necessary to reach a just and equitable solution in this case. The assets of the Receivership Estate will be equitably distributed by the Receiver, with the oversight of the [WCCC.][117]

The Debtor filed a concurrence with Receiver's Abstention Motion.[118]

## M. Patel's Response to the Receiver's Abstention Motion

On July 1, 2021, Patel filed a response to the Receiver's Abstention Motion (the "Patel

---

[115] *Id.* at 11-12.

[116] *Id.* at 13-14.

[117] *Id.* at 14.

[118] Docket # 196.

Objection").[119]  Patel argues that the parties to the Receivership Case wrongfully colluded to have

the Receivership Order entered as a means of preventing creditors who are not parties to the

Receivership Case from collecting debts owed to them by the defendants in the Receivership

Case; that there is no authority under Michigan law which permits the Receivership Stay to bar

Patel's collection efforts; that the Receivership Order does not bar this Court from exercising

jurisdiction over the Settlement Agreement and appointing a Chapter 11 trustee; that the

Receiver is not acting consistent with his duties under the Receivership Order; and that "by

reasserting its jurisdiction over the [S]ettlement [A]greement, this Court would not pre-empt or

disrupt any genuine work done by Receiver."[120]  Patel does not cite any authority to support any

of these arguments.

**N.  The United States Trustee's objection to the Patel Motion**

On July 8, 2021, the United States Trustee (the "UST") filed an objection to the Patel

Motion.[121]  The UST argues that Patel's "motion [for the appointment of a Chapter 11 trustee]

seeks relief which the Bankruptcy Code does not authorize."[122]  The UST argues that "[u]nder 11

U.S.C. § 1104, the [UST] cannot appoint a trustee after confirmation of a chapter 11 plan."[123]

**O.  The Receiver's reply brief in support of his Abstention Motion**

On July 15, 2021, the Receiver filed a reply brief in support of the Abstention Motion

---

[119]  Docket # 195.

[120]  *Id.* at 1-7.

[121]  Docket # 198.

[122]  *Id.* at 2 ¶ 4.

[123]  *Id.*

(the "Receiver's Reply").[124]  In the Receiver's Reply, the Receiver, like the UST, argues that the

Patel Motion is "wholly without merit" because it "requests relief that is not authorized under

section 1104 of the Bankruptcy Code."[125]  The Receiver argues that "Section 1104 of the

Bankruptcy Code specifically limits the time period within which the Court can appoint a

Chapter 11 trustee to the period 'after the commencement of the case but before confirmation of

a plan[.]' 11 U.S.C. § 1104(a)."[126]  The Receiver argues further that even if the Bankruptcy Code

provided the Court with authority to appoint a Chapter 11 trustee in this case, "Patel has failed to

establish that cause exists for the appointment of a Chapter 11 trustee or that such an

appointment is in the best interest of all constituencies. 11 U.S.C. § 1104(a)."    The Receiver

argues further that

> under the circumstances of this case, where the Receivership Case
> remains ongoing, the Receiver is working diligently to equitably
> distribute the assets of the Receivership Estate, and the Receiver is
> fully able to protect the interest of the parties under the oversight of
> the Wayne County Circuit Court, both economy and the efficiency
> of administration are better served by this Court exercising its
> discretion to abstain from hearing the [Patel Motion] (or, in the
> alternative, denying the [Patel Motion] in its entirety and closing
> this case).[127]

The Receiver notes that "[t]he secured creditors of the Receivership Estate are [owed] an amount

in excess of $10,000,000.00" and that Patel is an unsecured creditor.[128]  The Receiver argues that

for these reasons, "[t]here will be no advantage to the creditors of St. James, including . . . Patel,

---

[124]  Docket # 199.

[125]  Receiver's Reply (Docket # 199) at 2 ¶ 1 (footnote omitted).

[126]  *Id.*

[127]  *Id.* at 2-3 ¶ 2.

[128]  *Id.* at 1, 3 ¶ 3.

if this Court were to appoint a Chapter 11 [t]rustee in this Bankruptcy Case, as there are simply

no assets available to satisfy St. James['s] secured claims, much less the outstanding general

unsecured claims."[129]

**P. Patel's reply to the Receiver's objection to the Patel Motion**

On July 16, 2021, Patel filed a reply to the Receiver's objection to the Patel Motion.[130]

Patel's reply disputes the Receiver's allegations that the Receiver has been diligent in carrying

out his duties, and that Patel's actions have impeded the Receiver in carrying out those duties.

Patel argues that because the Receiver has not stated what steps the Receiver has taken to try to

market and sell the Receivership Estate, there is no basis for the Receiver's statements that he

has been trying to sell the Receivership Estate. Patel cites no authority in support of his position

that this Court has authority to appoint a Chapter 11 trustee.

**Q. Patel's reply to the Debtor's objection to the Patel Motion**

On July 16, 2021, Patel filed a reply to the Debtor's objection to the Patel Motion.[131] In

the reply, Patel concedes that the time frame expressly stated in 11 U.S.C. § 1104(a)(1) for a

party in interest to request the appointment of a trustee is "any time after the commencement of

the case but before confirmation of a plan." Patel also concedes that § 1104(a)(1) "is silent,

however, as to the appointment of a trustee for a limited purpose after a bankruptcy case is

reopened."[132] Patel argues that, despite the time-limiting language of § 1104(a)(1), the Court

can, under § 1104(a)(1) or under its equitable powers, appoint a trustee *after* confirmation of a

---

[129] *Id.* at 4 ¶ 4.

[130] Docket # 200.

[131] Docket 201.

[132] *Id.* at 1.

plan, and the closing of the case, if the case is reopened "'for cause.'"[133]  Patel argues that

> [i]f the court cannot, under 11 U.S.C. § 1104(a)(1) or through its
> equitable powers, appoint a trustee after a case is reopened "for
> cause," then no clear mechanism would exist for the court to
> remedy situations brought about by the Debtor's own misconduct
> or malfeasance. An interpretation leading to such a result would be
> contrary to the intent of 11 U.S.C. §350(b), which allows the court
> to interpret and enforce its own prior orders.  *See, e.g.*, *In re Lazy
> Days' RV Ctr. Inc.*, 724 F.3d 418 (3d Cir. 2013).[134]

Patel argues further that his actions in reopening the bankruptcy case and seeking the

appointment of a Chapter 11 trustee are not barred by the Receivership Order.  This is so,

according to Patel, because "[t]he Receivership Order contemplates the possibility that a

proceeding under Chapter 11 may be filed, and specifically states that the Receiver 'shall

maintain managerial and operational control of the Receivership Estate.'  Receivership Order

¶ 8."[135]  Patel argues further that the relief he seeks in not barred by laches because he has been

diligent in his efforts to enforce the Settlement Agreement.[136]

## R.  The hearing on the Patel Motion and the Abstention Motion

On July 21, 2021, the Court held a hearing on the Patel Motion and the Abstention

Motion.  During the hearing the Court raised the issue of whether it has subject matter

jurisdiction to grant the relief requested by the Patel Motion (*i.e.*, to appoint a Chapter 11

trustee), and thereby to enforce the Settlement Agreement that is the subject of the Patel Motion

(the "Subject Matter Jurisdiction Issue").  The question arises because that Settlement Agreement

was made after the confirmation of the Debtor's Chapter 11 Plan in this case, and was never

---

[133]  *Id.* at 2.

[134]  *Id.*

[135]  *Id.*

[136]  *Id.* at 3.

included in the confirmed Chapter 11 Plan, by any pre-confirmation or post-confirmation Plan

modification, or otherwise.  Nor was any order ever entered in this case adopting or approving

the Settlement Agreement.

Patel took the position that the Court has subject matter jurisdiction.  The Receiver took

the position that the Court lacks subject matter jurisdiction to grant the relief requested in the

Patel Motion or otherwise to enforce the Settlement Agreement.  The parties requested the

opportunity to brief the Subject Matter Jurisdiction Issue and the Court granted that request.

On July 22, 2021, the Court entered an order regarding further proceedings (the "July 22

Order"), which required Patel and the Receiver to file briefs regarding their respective positions

on the Subject Matter Jurisdiction Issue; required the Debtor to file a brief regarding the Subject

Matter Jurisdiction Issue, "which at a minimum states what the Debtor's position is with respect

to the [S]ubject [M]atter [J]urisdiction [I]ssue; and required the Receiver "to file as a

supplemental exhibit or exhibits in support of the Abstention Motion, a copy of" various "items

filed in the pending state court [R]eceivership [C]ase . . . " that would provide more information

on what has occurred in that case."[137]  The July 22 Order also gave the UST the option of filing a

brief regarding the Subject Matter Jurisdiction Issue.[138]  The July 22 Order stated, in relevant

part:

> After the deadlines have passed for the filing of the items listed in
> paragraphs 1 through 4 above, the Court will decide whether a
> further hearing is necessary, *e.g.*, regarding the issue of subject
> matter jurisdiction, and if so, the Court will enter an order
> scheduling such a hearing. The Court will decide the [S]ubject
> [M]atter [J]urisdiction [I]ssue, with or without a further hearing,
> and the Court will enter one or more further orders regarding the

---

[137]  Docket # 203 at ¶¶ 1-3, 5 .

[138]  *Id.* at ¶ 4.

pending motions.[139]

## S. The parties' positions on the Subject Matter Jurisdiction Issue

Patel, the Receiver, and the Debtor filed their required briefs regarding the Subject Matter Jurisdiction Issue. The UST did not file a brief on this issue.[140]

### 1. Patel's position on the Subject Matter Jurisdiction Issue

Patel argues that this Court has subject matter "jurisdiction over enforcement of the Settlement Agreement or application of an alternative remedy."[141] This is so, according to Patel, because the Settlement Agreement (1) gives Patel an allowed $340,000 claim in this bankruptcy case; (2) provides that "any action to enforce its terms 'shall be brought in the Bankruptcy Court, which shall retain jurisdiction to address same;'" (3) provides that the "Patel [Family E]ntities would be deemed to have released their claims against the Mali [Family E]ntities and vice versa, including claims in the instant bankruptcy;" and (4) provides that "all votes of the Patel [Family] Entities would be 'deemed to have been changed from votes of rejection to votes of acceptance of those Plans in the St. Francis Bankruptcy, the St. Jude Bankruptcy and the St. James Bankruptcy.'"[142] Patel argues that an action to enforce the Settlement Agreement is a civil proceeding involving an allowed claim under 11 U.S.C. § 502, and voting to accept or reject a Chapter 11 Plan under 11 U.S.C. § 1126, and that these types of proceedings "'by [their] very nature, could arise only in bankruptcy cases.'"[143] Patel states in his brief: "An 'allowed claim'

---

[139] *Id.* at ¶ 6.

[140] *See* Docket ## 206-208.

[141] Docket # 206 at 6.

[142] *Id.* at 2-3, 6-7.

[143] *Id.* at 4 (quoting *Allard v. Coenen* (*In re Trans-Industries, Inc.*) 419 B.R. 21, 27 (Bankr. E.D. Mich. 2009); *see also id.* at 8 ("The issue before the [C]ourt is a civil proceeding and the matter could

16-42333-tjt   Doc 222   Filed 10/14/22   Entered 10/14/22 16:43:37   Page 35 of 54

does not exist as a concept outside of title 11 but instead is defined by 11 U.S.C. § 502. Likewise, the right to vote on a confirmation plan is granted by title 11 and does not exist outside bankruptcy. 11 U.S.C. § 1126."[144]  Patel states further that "[m]atters related to votes on a plan and allowed claims can *only* arise in a case under title 11."[145]  It follows, according to Patel, that this is a case "'arising in' a case under title 11."[146]  And, according to Patel, it follows from that conclusion, that the Court has subject matter jurisdiction to enforce the Settlement Agreement under 28 U.S.C. §§ 1334(b), 157(a), 157(b)(1) and L.R. 83.50 (E.D. Mich.).[147]

Patel also argues that bankruptcy courts have "broad discretion to reopen a bankruptcy case 'for cause'" under 11 U.S.C. § 350(b), and that 11 U.S.C. § 350(b) and 28 U.S.C. § 1334(b) "[t]aken together . . . provide subject matter jurisdiction for a bankruptcy court to address, post-closing, matters that arise in the bankruptcy case."[148]

Patel alleges, ***incorrectly***, that "[b]oth the St. James and the St. Francis Chapter 11 Plans were confirmed" on the same day that the September 27, 2016 Settlement was placed on the record in the St. Francis bankruptcy, apparently implying, incorrectly, that confirmation of each of two plans in the two different bankruptcy cases was made possible by the votes rejecting each of those plans being deemed votes accepting each of the plans in each of these cases, under the

---

*only* arise in a case under title 11 in that it pertains to, *inter alia*, confirmation of plans and allowed claims." (italics in original)).

[144]  *Id*. at 6.

[145]  *Id.* at 7 (italics in original).

[146]  *Id.* at 4.

[147]  *Id.*

[148]  *Id.* at 7.

terms of the Settlement Agreement.[149]  Patel notes that "[t]he Settlement Agreement also specified that 'in accordance with the Settlement, the plans of reorganization for St. Jude, **St. James** and St. Francis (the "Debtor Entities") were confirmed by the Bankruptcy Court;'" that "the consideration in the Settlement [A]greement was premised on the Patel [Family E]ntities being deemed to have accepted the [P]lan, and on [Patel's] claim being deemed allowed;" that "[t]he Settlement Agreement specifically states that it hinged on the [P]lan . . . for the instant bankruptcy of St. James being confirmed by the Bankruptcy Court;" and that "the Settlement Agreement was intrinsic to the approval of the [P]lan in this case, even if it was not put on the record until the hearing on the St. Francis case."[150]

Patel also argues that because "bankruptcy courts have 'the power and authority to interpret and enforce their judgment and orders' . . . the Court has the authority to interpret and enforce the [P]lan 'in accordance with the Settlement [Agreement].'"[151]

Patel argues further that because the Mali Family Entities have materially breached the Settlement Agreement by failing to pay him the amounts owed to him under that agreement, he is entitled to rescind the Settlement Agreement.  Patel argues that "[t]he application of the appropriate remedy of rescission would unwind the contract and restore to [Patel] and other creditors the consideration given up for the Settlement Agreement."[152]  According to Patel, the Court has the power to rescind the Settlement Agreement and the effect of such rescission would be that Patel's objections to the St. James Plan "would be reinstated and *only* the Bankruptcy

---

[149]  *Id.* at 2, 7.

[150]  *Id.* at 7 (bold and italics in original), 8.

[151]  *Id.* (citation omitted).

[152]  *Id.* at 8.

Court could resolve the resulting issues."[153]

The Court must note, at this juncture, that many of the facts alleged by Patel in his subject matter jurisdiction brief are not correct. Most importantly, St. James's Chapter 11 Plan was **not** confirmed on the same day as the plan in the St. Francis bankruptcy case. The order confirming the St. James Chapter 11 Plan was entered on September 16, 2016 (*see* Docket # 156), while the order confirming St. Francis's first amended Chapter 11 plan was entered a month later, on October 16, 2016 (*see* Docket # 237 in Case No. 16-41554). Therefore, both the September 27, 2016 Settlement placed on the record in the St. Francis bankruptcy case, and the Settlement Agreement executed on January 30, 2017 occurred well after confirmation of the Plan in this case on September 16, 2016. Despite his earlier statements to the contrary, Patel admits later in the brief that the Settlement Agreement was "finalized and signed **post-confirmation**."[154] Furthermore, the Court confirmed the St. James Plan over the objections of Patel Family Entities.[155] It did **not** confirm the Plan because votes to reject the Plan were deemed to be votes to accept the Plan under the post-confirmation Settlement Agreement. Neither the September 27, 2016 Settlement placed on the record in the St. Francis bankruptcy case, nor the Settlement Agreement executed on January 30, 2017, had any impact at all on confirmation of St. James's Plan on September 16, 2016.

### 2. The Receiver's position on the Subject Matter Jurisdiction Issue

The Receiver argues that this Court lacks subject matter jurisdiction to appoint a Chapter 11 trustee, or otherwise to enforce the Settlement Agreement, in this case "because there is no

---

[153] *Id.* (italics in original).

[154] *Id.* (emphasis added).

[155] *See* Docket # 156 (Order Confirming St. James's Plan) at 4 ¶ 2 ("All objections to confirmation of the Plan, which have not been withdrawn, abandoned, or resolved, are overruled.").

nexus between the enforcement of the post-confirmation Settlement Agreement and th[is b]ankruptcy [c]ase."[156]  The Receiver argues that Patel "has failed to allege any authority under the Bankruptcy Code or case law that would support the appointment of a Chapter 11 [t]rustee post-confirmation."[157]  The Receiver notes that under paragraph 8.1 of the Plan, all property of the Debtor-in-Possession vested with the Reorganized Debtor on the "Effective Date" of the Plan, which was November 16, 2016, the date St. James's bankruptcy case was closed, and as of that date,

> the Reorganized Debtor [was permitted to] operate its business, if any, and use, acquire, and dispose of property and *settle and compromise Claims* or Interests without the supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by this Plan and the Confirmation Order.[158]

The Receiver notes that

> [a]t the time the Settlement Agreement was executed [(January 30, 2017)], St. James'[s] Plan had been confirmed, the [E]ffective [D]ate had occurred, all property of the Debtors had vested in St. James, and St. James'[s] Bankruptcy Case had been closed. The Plan did not contain any provisions with respect to enforcement of the Plan terms, and it did not contemplate or incorporate the Settlement Agreement or its enforcement terms.[159]

The Receiver argues that under these facts and circumstances, a proceeding to enforce the Settlement Agreement is not "related to" St. James's bankruptcy case.  This is so, according to

---

[156] Docket # 207 at 2, 11.

[157] *Id.*

[158] *Id.* at 5 (quoting Plan (Docket # 93) at ¶ 8.1 (italics added by Receiver).

[159] *Id.* at 5; *see also id.* at 9 ("At the time the Settlement Agreement was executed, St. James'[s] Plan had been confirmed, the [E]ffective [D]ate had occurred, all property of the Debtors had vested in St. James, and St. James'[s] [b]ankruptcy [c]ase had been closed. The terms of the Settlement Agreement were not made part of the St. James Plan, the Confirmation Order, or any modifications thereto in the [b]ankrutcy [c]ase.").

the Receiver, because

- "the Court is not being asked to construe or interpret the confirmed [P]lan or to enforce its [C]onfirmation [O]rder in this case;"[160]

- "the relief requested by Patel is neither authorized under the Bankruptcy Code or appropriate under the circumstances of this case;"[161]

- because "all of the property of Debtor was vested in St. James as the Reorganized Debtor on the [E]ffective [D]ate of the Plan, there are no 'assets of the St. James estate' for a trustee to administer;"[162]

- the Trustee Appointment Motion "will not affect the interpretation, implementation, consummation, execution, or administration of the confirmed Plan";[163] and

- as a result of all of these facts and circumstances, the Trustee Appointment Motion "does not have the requisite close nexus to the bankruptcy case required to confer subject matter jurisdiction over this matter."[164]

The Receiver argues that despite the fact that the Settlement Agreement provided that Patel would have the right to file a motion for the appointment of a Chapter 11 trustee in the St. James bankruptcy case in event of a default, the parties through such agreement could not confer on this Court subject matter jurisdiction where such jurisdiction was otherwise lacking.[165]

### 3. The Debtor's position on the Subject Matter Jurisdiction Issue

The Debtor, like the Receiver, argues that the Court "does not have proper subject matter jurisdiction to enforce the post-confirmation [Settlement A]greement" because that agreement

---

[160] *Id.* at 9.

[161] *Id.*

[162] *Id.*

[163] *Id.*

[164] *Id.* at 10 (citations omitted).

[165] *Id.* at 10-11.

does not have "a close nexus to the [confirmed P]lan" in this case.[166]  The Debtor summarizes the

law governing a bankruptcy court's jurisdiction as follows:

> Bankruptcy subject matter jurisdiction is conferred by statute.
> Subject matter jurisdiction cannot be conferred by agreement, by
> consent of the parties, by a plan of reorganization or even an order
> confirming a plan. [*Papas v. Buchwald Cap. Advisors, LLC* (*In re*
> *Greektown*[)], [728] F.3d [567,] 578 [(6th Cir. 2013)]; *Binder v.*
> *Price Waterhouse & Co.* (*In re Resorts Int'l, Inc.*), 372 F.3d 154,
> 166-67 (3rd Cir. 2004); *Equipment Finders, Inc. Of Tennessee v.*
> *Fireman's Fund Insurance Co., et al* (*In re Equipment Finders,*
> *Inc. of Tenn.*), 473 B.R. 720, 728 (Bankr. M.D. Tenn. 2012).

> 28 U.S.C. §1334(b) provides the district court (and by
> reference this Bankruptcy Court) jurisdiction over all civil
> proceedings "arising under," "arising in," or "related to" a case
> under Title 11. Because these categories operate conjunctively, "it
> is necessary only to determine whether a matter is at least 'related
> to' the bankruptcy." *Mich. Employment Sec. Comm'n v. Wolverine*
> *Radio Co.* (*In re Wolverine Radio Co.*), 930 F.2d 1132, 1141 (6th
> Cir. 1991).[167]

The Debtor notes that while the test for determining whether a bankruptcy court has

"related to" jurisdiction over a civil proceeding is normally determined by applying the standard

set forth in *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (citations omitted) (italics in

original) ("whether *the outcome of that proceeding could conceivably have any effect on the*

*estate being administered in bankruptcy*" or, in other words, whether "the outcome could alter

the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and

which in any way impacts upon the handling and administration of the bankrupt estate"), post-

confirmation that standard is different.[168]  The Debtor argues:

> In the post-confirmation context, "the essential inquiry appears to

---

[166]  Docket # 208 at 2.

[167]  *Id.* at 2-3.

[168]  *Id.* at 3.

> be whether there is a close nexus to the bankruptcy plan or
> proceeding sufficient to uphold bankruptcy court jurisdiction over
> the matter." *Thickstun Bros. Equip. Co. v. Encompass Servs. Corp.*
> (*In re Thickstun Bros. Equip. Co.*), 344 B.R. 515, 521 (B.A.P. 6th
> Cir. 2006) (quoting [*Binder v. Price Waterhouse & Co.* (*In re*]
> *Resorts Int'l*[)], 372 F.3d [154,] 166-67 (3rd Cir. 2004)). The
> matter "must affect an integral aspect of the bankruptcy process —
> there must be a close nexus to the bankruptcy plan or proceeding."
> *Resorts Int'l*, 372 F.3d at 167.[169]

The Debtor argues further that "[w]here a plan vests property in a reorganized debtor, the

bankruptcy estate ceases to exist and the scope of a bankruptcy court's 'related to' jurisdiction is

diminished."[170]

Before applying the "related to" subject matter jurisdiction standard, the Debtor notes,

and it bears repeating, that Patel's brief "relies on a number of inaccurate factual statements and

assumptions[.]"[171]  The Debtor's brief accurately corrects the following inaccuracies in Patel's

brief:

- St. James's Plan was not confirmed on the same date that the September 27, 2016 Settlement was put on the record in the St. Francis case, as Patel alleges.  Rather, St. James's Plan was confirmed over the objections of the Patel-Related Entities on September 16, 2016, more than a month before the September 27, 2016 Settlement Agreement was put on the record in the St. Francis case.[172]

- The Debtor notes that Patel did not vote to reject St. James Plan, as Patel alleges, and Patel was not a creditor in the St. James bankruptcy case.[173]

- The Debtor notes that the September 27, 2016 Settlement that was put on the record in the St. Francis case was not, and could not have been, intrinsic to approval of the Plan in the St. James bankruptcy case, nor could St. James's Plan hinge on the

---

[169] *Id.*

[170] *Id.* at 3-4 (citation omitted).

[171] *Id.* at 5.

[172] *Id.*

[173] *Id.*

September 27, 2016 Settlement as Patel alleges in his brief, because St. James's Plan was confirmed on September 16, 2016 over the objections of the Patel-Related Parties, before the September 27, 2016 Settlement was reached.[174]

- The Debtor alleges that the matter now before the Court is not a civil proceeding that could arise only in a title 11 case as Patel alleges, because, contrary to Patel's allegations, it does not relate to either any allowed claim in St. James's bankruptcy case or confirmation of St. James's Plan. Rather, "[t]he [S]ettlement [A]greement was a post-confirmation agreement not contemplated in the [P]lan, the [P]lan was not amended, and . . . Patel never filed a claim in this case that could be allowed."[175]

The Debtor alleges that the Court does not have "related to" subject matter jurisdiction over this matter, because (1) "[t]his matter does not relate to any term of the confirmed [P]lan"; (2) "[t]here is no question or dispute here regarding interpretation, implementation, consummation, execution or administration of the confirmed [P]lan"; (3) "[t]his matter does not involve the enforcement or interpretation of any order entered by this Court;" (4) "[t]his matter does not involve any claims filed against the estate in the bankruptcy estate [because] . . . Patel was not a creditor of St. James until execution of the . . . Settlement Agreement;" (5) "[t]his matter cannot affect the bankruptcy estate [because a]ll property of the Debtor has vested in St. James as the Reorganized Debtor and the bankruptcy estate no longer exists;" and (6) "[t]he [Settlement A]greement itself cannot [confer] subject matter jurisdiction" on this Court.[176] The Debtor argues that this case is no more than an action "to collect a post-confirmation debt and, apparently, to investigate a state-court appointed [R]eceiver" and "[n]either of these purposes implicate the [P]lan or affect the bankruptcy estate which no longer exists."[177] The Debtor argues that for all of these reasons, "[t]his matter has no nexus whatsoever to the confirmed [P]lan" and

---

[174] *Id.* at 6.

[175] *Id.* at 6-7.

[176] *Id.* at 7-8 (citation omitted).

[177] *Id.* at 8 (citations omitted).

the Court does not have "related to" subject matter jurisdiction.[178]

## IV. Discussion

The Court concludes that the Patel Motion must be denied, because this Court lacks subject matter jurisdiction to grant any of the relief sought by that motion. The motion seeks to enforce an agreement that the reorganized Debtor, St. James, made well after the confirmation of St. James's Plan in this Chapter 11 case, and to collect a debt that St. James incurred only well after the confirmation of its Plan. Not only did the debt allegedly owing by St. James to Patel arise entirely after confirmation of St. James's Plan in this case, but also that debt has nothing to do with St. James's confirmed Plan in this case. Just as with *any* debt that St. James incurred after it emerged from bankruptcy with a confirmed plan in this case, this Court has no jurisdiction to grant Patel any relief based on that debt.

As discussed in Part III.B of this Opinion, Patel was never a creditor in this bankruptcy case. St. James did not list Patel as a creditor on its schedules, and although Patel was provided notice of the St. James bankruptcy case, he never filed a proof of claim in this case. The deadline to file proofs of claim, for non-governmental entities, was June 21, 2016.

Also as discussed in detail in Part III.B of this Opinion, St. James's Chapter 11 Plan provided that St. James would reorganize its debts and continue to operate its skilled nursing care facility. Although Patel and related entities objected to confirmation of the Plan on several grounds, they did not assert that St. James owed any debt to Patel himself. After the Court held an evidentiary hearing on the objections to confirmation on September 13, 2016, the Court overruled all of the objections, in an opinion filed September 16, 2016. That same day, the Court entered an order confirming the St. James Plan.

---

[178] *Id.* at 8-9.

As discussed in Part III.C.1 of this Opinion, the Settlement Agreement on which Patel bases his claim and his motion was made only well after confirmation of the St. James Plan. The terms of the agreement were first described orally on the record, during an evidentiary hearing held on September 27, 2016 in the Chapter 11 case of a different debtor, St. Francis. During that hearing, the Court was informed that the parties would work in good faith to execute a written settlement agreement. The Settlement Agreement resolved the objections of the Patel-Related Entities to confirmation of the debtors' proposed plans in the Chapter 11 cases of St. Francis and St. Jude. The Settlement Agreement had nothing to do with the confirmation of the St. James Plan in this case; that Plan had already been confirmed on a contested basis on September 16, 2016.

As it was described orally during the evidentiary hearing in the St. Francis case, a stipulation and order was to have been filed in this case, after a written settlement agreement was executed. But no such stipulation was ever filed, and no such order was ever entered in this case.

As noted in Part III.B of this Opinion, this case was closed on November 16, 2016, after no one filed a timely objection to the closing of the case. At that point, the St. James case was concluded.

As described in Part III.E of this Opinion, it was not until January 30, 2017 that the Mali Family Entities, including St. James, and the Patel Family Entities, including Patel, executed the written Settlement Agreement. This was four and one half months after the Court confirmed the St. James Plan, and this case (*i.e.*, the St. James case) had been closed for two and one half months.

The written Settlement Agreement required St. James to pay Patel a total of $340,000, including a $100,000 lump sum payment followed by monthly payments. It also stated that Patel

"shall be deemed to have an Allowed Claim in the St. James Bankruptcy in that amount."  As

quoted in Part III.E of this Opinion, in the event of an uncured default in payment by St. James,

the Settlement Areement stated that

> [Patel] may file a motion for appointment of a trustee in the St.
> James bankruptcy proceeding. If there is a failure by St. James to
> pay all amounts due hereunder which are not cured during the Cure
> Period, [Patel] shall have the right to a hearing for a Chapter 11
> trustee and the failure to pay shall be grounds for that trustee.

The Settlement Agreement contemplated that this Court might conclude that it lacked

subject matter jurisdiction to address any action to enforce the Settlement Agreement, and stated

that in that event, an action could be brought in federal (non-bankruptcy) court or state court:

> 10.    Any action to enforce this Settlement Agreement shall be
> brought in the Bankruptcy Court, which shall retain
> jurisdiction to address same. In the event that the
> Bankruptcy Court concludes that it does not have
> jurisdiction to hear and determine any issues pertaining to
> this Settlement Agreement, then the matter shall be brought
> in any state or federal court of competent jurisdiction
> within the geographic area covered by the United States
> District Court for the Eastern District of Michigan.

At no time did Patel or anyone else file a motion to reopen this bankruptcy case to seek

any order authorizing or approving the Settlement Agreement, or to propose to modify St.

James's confirmed Plan in any way to include or take account of the obligations that St. James

incurred in the Settlement Agreement.  Instead, for over four more years, this case remained in its

post-confirmation, closed state, until May 27, 2021, when Patel filed his motion to reopen the

case, to seek enforcement of the Settlement Agreement.

The confirmed Plan in this case did not impose any obligation to Patel whatsoever on the

part of the reorganized Debtor St. James.  And the Plan neither recognized nor created any debt

owing from St. James to Patel.  None of the terms of the Settlement Agreement were part of the

confirmed Plan in this case.[179]  Nor was Patel ever a creditor with an allowed claim, in any

amount, in this case.

 Under these circumstances, the Court concludes that in this case, the Court lacks subject

matter jurisdiction to grant any relief enforcing the Settlement Agreement, including any relief

sought by the Patel Motion.  As the parties to the Settlement Agreement expressly contemplated

in paragraph 10 of that agreement, quoted in Part III.E of this Opinion, Patel must seek relief

elsewhere, not in this case in this Court.

Bankruptcy courts are courts of limited jurisdiction.  "[B]ankruptcy court jurisdiction

'must be confined within appropriate limits and does not extend indefinitely, particularly after

the confirmation of a plan and the closing of a case.'" *Binder v. Price Waterhouse & Co., LLP*

(*In re Resorts Int'l, Inc.*), 372 F.3d 154, 164 (3d Cir. 2004) (footnote omitted) (citation omitted).

"[B]ankruptcy courts, in general, should not exercise subject matter jurisdiction over *any*

postconfirmation liability."  *Holly's, Inc. v. City of Kentwood* (*In re Holly's, Inc.*), 172 B.R. 545,

562 (Bankr. W.D. Mich. 1994), *aff'd.*, 178 B.R. 711 (W.D. Mich. 1995) (italics in original)

(citations omitted).

In *Papas v. Buchwald Cap. Advisors, LLC* (*In re Greektown Holdings, LLC*), 728 F.3d

567 (6th Cir. 2013), the United States Court of Appeals for the Sixth Circuit discussed the

subject matter jurisdiction of the bankruptcy courts, and how that jurisdiction narrows after a

Chapter 11 plan has been confirmed:

> A district court's jurisdiction over bankruptcy cases and
> proceedings comes from 28 U.S.C. § 1334(b) which gives the
> district courts "jurisdiction of all civil proceedings arising under

---

[179]  Nor did Patel or anyone else make any attempt to modify the confirmed Plan in this case, after confirmation.  In any event, after confirmation, the confirmed Plan could be modified only by "the proponent of the plan or the reorganized debtor," not by Patel, and then only "before substantial consummation of" the confirmed plan.  *See* 11 U.S.C. § 1127(b).

title 11, or arising in or related to cases under title 11." The grant of jurisdiction over proceedings "related to" the bankruptcy case is quite broad. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).

"'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'" *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn.* (*In re Dow Corning Corp.*), 86 F.3d 482, 489 (6th Cir.1996) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.* (quotation omitted). . . . "[T]here must be some nexus between the 'related' civil proceeding and the title 11 case. *Id.* (quotation omitted).

This case presents a slightly different twist from *Lindsey* because **here the dispute . . . occurred after the Chapter 11 plan was confirmed. "At the most literal level, it is impossible for the bankrupt debtor's estate to be affected by a post-confirmation dispute because the debtor's estate ceases to exist once confirmation has occurred."** [*Binder*] *v. Price Waterhouse & Co., LLP* (*In re Resorts Int'l, Inc.*), 372 F.3d 154, 165 (3d Cir.2004). **It is possible that a bankruptcy court's "related to" jurisdiction diminishes somewhat post-confirmation**. . . .
. . .

A better approach was taken by the Fifth Circuit in *Feld v. Zale Corporation* (*Matter of Zale Corporation*), 62 F.3d 746 (5th Cir.1995). In *Feld*, the Fifth Circuit inquired simply whether the outcome of the actions . . . would affect the bankruptcy estate. *See id.* at 755–59. When it found that the outcome of some of those actions would not affect the bankruptcy estate, the Fifth Circuit held that the bankruptcy court had no jurisdiction over them. *See id.* at 755–57. This approach comports with the "related to" test we followed in *Lindsey*, and this is the approach the district court should follow on remand.

728 F.3d at 577-78 (emphasis added) (some citations omitted).

The case of *Bank of Louisiana v. Craig's Stores of Texas, Inc.* (*In re Craig's Stores of Texas, Inc.*), 266 F.3d 388 (5th Cir. 2001) is instructive. In that case, the Fifth Circuit Court of

Appeals held that "related to" jurisdiction narrows after confirmation of a Chapter 11 plan, and stressed the "critical significance [of] the debtor's emergence from bankruptcy protection:"

As the Seventh Circuit put it,

> Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens.

> *Pettibone Corp. v. Easley,* 935 F.2d 120, 122 (7th Cir.1991). After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan. *In re Fairfield Communities, Inc.,* 142 F.3d 1093, 1095 (8th Cir.1998); *In re Johns–Manville Corp.,* 7 F.3d 32, 34 (2d Cir.1993). No longer is expansive bankruptcy court jurisdiction required to facilitate "administration" of the debtor's estate, for there is no estate left to reorganize.

266 F.3d at 390 (italics in original).

In *Price Waterhouse & Co., LLP,* which the Sixth Circuit quoted with approval in *Greektown Holdings*, the Third Circuit Court of Appeals held that whether "related to" jurisdiction exists, after a Chapter 11 plan has been confirmed, depends on "whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction over the matter." 372 F.3d at 166-67. And the court observed that "[m]atters that affect the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." *Id.* at 167; *see also Thickstun Bros. Equip. Co., Inc. v. Encompass Servs. Corp.* (*In re Thickstun Bros. Equip. Co., Inc.*), 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006).

In this case, there is no "close nexus," and in fact there is no "nexus" at all, between the relief sought by the Patel Motion, or any enforcement of the Settlement Agreement, on the one

hand, and the St. James confirmed Plan or this St. James bankruptcy case, on the other hand.  In

seeking to enforce the post-confirmation Settlement Agreement, Patel is not seeking to enforce or

have this Court interpret any order of this Court in this case, and Patel is not seeking to enforce

or have this Court interpret the confirmed Plan.

Nor would the relief Patel seeks have any impact on the bankruptcy estate in this case.

There is no bankruptcy estate left in this case.  Consistent with 11 U.S.C. § 1141(b),[180] the St.

James Plan vested all property of the estate in the reorganized Debtor, St. James.  *See* Part III.B

of this Opinion.  "At the most literal level, it is impossible for the bankrupt debtor's estate to be

affected by a post-confirmation dispute because the debtor's estate ceases to exist once

confirmation has occurred."  *See Greektown Holdings*, 728 F.3d at 577 (citation omitted).

With respect to this Court's subject matter jurisdiction, Patel's claim against the

reorganized Debtor St. James, based on the Settlement Agreement, is no different than any debt

St. James may have incurred after it emerged from bankruptcy, such as, for example, a debt for

goods that the reorganized Debtor St. James may have purchased on credit and not paid for.  This

Court has no jurisdiction to grant relief on either such claim.

Nor does it help Patel's position that the Settlement Agreement purported to give Patel an

allowed claim in this bankruptcy case, and to give Patel the right to move for the appointment of

a "trustee" in this Court after a default by St. James.  These provisions in the Settlement

Agreement are on the same footing as the provision in paragraph 10 that says that "the

Bankruptcy Court shall retain jurisdiction to address" any "action to enforce this Settlement

Agreement."  Such provisions, at most, are merely part of an agreement of the Settlement

---

[180]  "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."  11 U.S.C. § 1141(b).

Agreement parties. As such, they cannot create subject matter jurisdiction. Parties cannot create subject matter jurisdiction in this Court by mere agreement or consent, when otherwise there is no jurisdiction. *See, e.g.*, *Price Waterhouse & Co., LLP*, 372 F.3d at 161 (citations omitted) ("[N]either the bankruptcy court nor the parties can write their own jurisdictional ticket. Subject matter jurisdiction 'cannot be conferred by consent' of the parties. Where a court lacks subject matter jurisdiction over a dispute, the parties cannot create it by agreement even in a plan of reorganization."); *Thickstun Bros. Equip. Co., Inc.,* 344 B.R. at 521-22 (same).

Moreover, without more, these provisions in the Settlement Agreement are ineffective, especially given the timing of the agreement, well after confirmation of St. James's Plan. The Settlement Agreement provision purporting to give Patel an allowed claim of $340,000 in the St. James case may give Patel a post-confirmation, post-bankruptcy claim against the reorganized Debtor St. James. But it was ineffective to give Patel an allowed claim in this post-confirmation, post-closure bankruptcy case. Neither Patel nor any other party ever sought, or obtained, any order from this Court giving Patel an allowed claim in this bankruptcy case. Absent such an order, which would not necessarily have been granted in any event, the only way Patel could have an allowed claim in this case is if he had timely filed a proof of claim, which he did not do. *See generally* Fed. R. Bankr. P. 3002(a); 3003(c)(2); 3003(c)(3).

Similarly, the Settlement Agreement provision purporting to give Patel the possible right to the appointment of a "trustee" in the St. James case, in the event of a payment default by St. James, was ineffective. As the UST and the Debtor point out, the only Bankruptcy Code provision that could authorize the appointment of a trustee in this Chapter 11 case is 11 U.S.C. § 1104(a), and that section only permits the appointment of a trustee "[a]t any time after the commencement of the case but before confirmation of a plan." Patel cites no authority in support

of his argument that the Court could appoint a trustee in this case after confirmation of the St. James Plan. The Court could not do so. *See In re eToys, Inc.*, 331 B.R. 176, 186 (Bankr. D. Del. 2005) (holding that "based on the express language of [11 U.S.C. § 1104]," the remedy of the appointment of a trustee was "unavailable" "[b]ecause the [d]ebtor's [p]lan ha[d] been confirmed").

In addition to unsuccessfully arguing for "related to" jurisdiction here, Patel argues that this Court has subject matter jurisdiction because the Patel Motion is a "civil proceeding" "arising under title 11," and/or "arising in" a case under title 11. 28 U.S.C. § 1334(b). The Court disagrees.

Under 28 U.S.C. § 1334(b), this Court's subject matter jurisdiction includes all civil proceedings "arising under title 11" and "arising in" a case under title 11. "The phrase 'arising under title 11' describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11, and 'arising in' proceedings are those that, by their very nature, could arise only in bankruptcy cases." *Allard .v Coenen* (*In re Trans-Industries, Inc.*), 419 B.R. 21, 26-7 (Bankr. E.D. Mich. 2009) (citations omitted).

This is not a proceeding "arising under" the Bankruptcy Code, nor is it a proceeding "arising in" this bankruptcy case, given the meaning of those concepts in this context. Patel's post-confirmation $340,000 claim against the reorganized Debtor St. James does not involve a cause of action created or determined by any statutory provision of the Bankruptcy Code. Nor is it a claim that could only arise in bankruptcy cases. Rather, Patel's claim seeks to enforce a contract with St. James, and as such, it arises under non-bankruptcy law, and could arise outside of a bankruptcy case. Indeed, as the Court has explained above, Patel's claim in fact *did* arise outside of this bankruptcy case, because it arose well after confirmation of the St. James Plan.

Finally, the Court will address one more argument by Patel. Patel apparently argues that because St. James defaulted in payment under the Settlement Agreement, and if Patel cannot enforce that agreement in this Court, Patel somehow can rescind the Settlement Agreement, and that this would have the effect of undoing the confirmation of the plans in the St. Francis and St. Jude cases. But this argument does not show that this Court has subject matter jurisdiction over the Patel Motion in this case. First, Patel has not sought to rescind the Settlement Agreement; instead, the Patel Motion seeks to *enforce* that agreement. Second, even if Patel could rescind the Settlement Agreement, that would have no impact or bearing whatsoever on this case. As discussed above, the St. James Plan was confirmed in this case well before St. James, Patel, and the others made the Settlement Agreement, and the Settlement Agreement had nothing to do with the confirmation of the St. James Plan. A rescission of the Settlement Agreement would have no effect whatsoever on the confrmed Plan *in this case*. The question whether it might have any effect in the St. Francis case or the St. Jude case has no bearing on this case.[181] Third, and in any event, to date Patel has made no effort to rescind the Settlement Agreement.

For all of the reasons stated above, the Court must deny the Patel Motion for lack of subject matter jurisdiction. If Patel wishes to seek relief under the Settlement Agreement, he can seek such relief in an appropriate non-bankruptcy court; he may not do so in this bankruptcy case. The denial of the Patel Motion will make the Abstention Motion filed by the state court Receiver, English, moot. So the Court will deny that motion, as moot. To the extent the Abstention Motion seeks an award of attorney fees and costs against Patel, the Court will deny

---

[181] The St. Francis case (Case No. 16-41554) was closed on January 29, 2018. The St. Jude case (Case No. 16-42116) was closed on May 31, 2017. St. Jude later filed a new Chapter 11 case (its third such case), on November 2, 2018 (Case No. 18-54906). A Chapter 11 plan was confirmed in that case on March 25, 2020, but that case was later converted to Chapter 7, on October 6, 2021. (*See* Orders at Docket ## 177, 241 in Case No. 18-54906). That case remains pending as a Chapter 7 case.

that relief, without prejudice to any right English may have to seek such relief in the Receivership Case (described in Part III.H of this Opinion), or in any other appropriate non-bankruptcy case and non-bankruptcy court.

## V. Conclusion

For the reasons stated in this Opinion, the Court will enter an order denying the Patel Motion, for lack of subject matter jurisdiction, and denying the Abstention Motion, as moot.

**Signed on October 14, 2022**



/s/ Thomas J. Tucker
_____
**Thomas J. Tucker
United States Bankruptcy Judge**